## ANDREW JAICKS, Appellant, v. HENRY S. OPPENHEIMER et al.

### In Banc, April 2, 1915.

1. **SPECIAL TAXES: Priority of Liens.**  Liens on land for taxes take priority in the reverse order of other liens; that is, the last is first, and the first last.  And in the absence of a statute or charter provision to the contrary, there is no difference in this respect between liens for general taxes, and liens for special taxes.  And the right to priority of the later special tax bill over a prior one is implied, or at least not denied, by sections 22 and 24 of Article 8 of the Charter of Kansas City, declaring that any person claiming any estate or interest in the land may. be joined as defendants in the suit on the tax bill, "and the right, title, interest or estate of the parties made defendants in any such suit shall be bound thereby." [Disapproving Parker-Washington Company v. Corcoran, 150 Mo. App. 188.]

   *Held,* by WALKER, J., dissenting, that the last special tax bill cannot be given priority of liens over others previously issued, unless there is a statute or city charter authorizing such priority; and such priority not only is not given by the charter of Kansas City, but that charter specifically says that every special tax bill "shall be a lien on the land described therein upon the date of the certification thereof to the city treasurer" by the Board of Public Works, which clearly means that the tax bill which is first in date of certification is first as a lien.

2. **———: Referable to Taxing Power.**  The power to assess private property for a public improvement is referable to and derivable from the taxing power of the State lodged by the Constitution in the General Assembly, and such special taxes are, in their essence, just as much taxes as are general taxes assessed against the same land for the support of the government; and

the assessment and collection of either special or general taxes are an exercise of the taxing power.

*Held*, by WALKER, J., dissenting, that priority of liens of general taxes did not exist at common law, but had its origin in a statute, first enacted in this State in 1820; that the doctrine of sovereignty of the State to make general taxes a lien on land cannot be applied to special taxes except by statute, or by a city charter of equal dignity with a statute; that there is no such statute, and the charter of Kansas City (section 24, article 8) specifically declares. that a special tax bill shall be a lien on the land described therein "upon the date of the certification thereof to the city treasurer" by the Board of Public Works, which can have no other meaning than that each special tax bill takes priority in the order in time of its certification; and that, therefore, the last bill certified cannot take priority as a lien over others previously certified.

3. ——: **Basis for Priority of Lien.** Special assessments are charges on the physical property, and proceedings to enforce them are *in rem*, or against the thing itself. The basis of the assessment is that it is a just equivalent of the increased value or permanent increment due to the public improvement, and the tax bill represents that added value, and the city or contractor is entitled to be paid that added amount without waiting for the holders of prior liens to be paid.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED AND REMANDED.

*T. P. Buckner* for appellant.

(1) Tax liens take priority in the reverse order to ordinary liens; that is, in tax liens "the last shall be first and the first last." This rule as to general taxes is so well settled that it is conceded and requires no citation of authority. (2) In the matter of priority there is no distinction between the lien of general taxes and that of special taxes for general improvements. The liens of special tax bills also take priority in the reverse order of their date. Paving Co. v. Realty Co., 168 Mo. App. 468; Construction Co. v. Rink Co., 242

Mo. 241; Burke v. Lukens, 12 Ind. App. 648; Anderson v. Rider, 46 Cal. 134; Sayler v. Davis, 22 Wis. 217; Wass v. Smith, 34 Minn. 304; Fletcher v. Oshkosh, 18 Wis. 244; Morey v. Duluth, 75 Minn. 221; Cooley on Taxes (3 Ed.), 875. (3) The last special tax bill issued takes precedence over all prior incumbrances and is the superior lien. Construction Co. v. Ice Rink Co., 242 Mo. 241. (4) This is true although there is no express statute, ordinance or charter giving or making the last bill a first lien. Construction Co. v. Ice Rink Co., 242 Mo. 241. (5) That special taxes and general taxes stand alike as to priority and are a superior lien to all other incumbrances, while once a mooted question, is now the settled law of this State, and has forever been set at rest. Paving Co. v. Realty Co., 168 Mo. App. 476. (6) The charter of Kansas City is express that the tax bill shall be a lien against all prior lien holders or persons "interested" in the real estate charged by the tax bill. City Charter, secs. 22, 24, art. 8. (7) The tax bill in this case, being the last one issued in point of time added value to the existing liens, enhanced their security, and on account of public policy as well as the settled law of this State, it should be held to be a prior lien over all existing incumbrances including the lien of prior tax bills. (8) Until the case of Parker-Washington Co. v. Construction Co., 150 Mo. App. 188, was decided, no one in this State doubted that the last tax bill was the superior lien. The reasoning in that case has been expressly repudiated in the more recent case of the St. Louis Court of Appeals, 168 Mo. App. 468, and the more recent case of the Supreme Court, 242 Mo. 241. (9) The language of the charter in St. Louis in which all the above cases were founded, did not contain such an express provision as is contained in the Kansas City charter. NORTONI, J., in the adverse case relied upon, expressly held that if there was such an express charter provision the last tax would be a first lien and

cited the case of Keating v. Craig, 73 Mo. 507. The charter provision of Kansas City now is as express as it was when the case of Keating v. Craig was decided.

*Scarritt, Scarritt, Jones & Miller* for respondent, Barber Asphalt Paving Co.

(1) The lien which is prior in time gives a prior claim and is entitled to satisfaction out of the subject-matter before subsequent liens binding the same property. 25 Cyc. 678; 25 Am. & Eng. Ency. Law, 1236-7; Rankin v. Scott, 12 Wheat. (U. S.) 177; Parker-Washington Co. v. Corcoran, 150 Mo. App. 188. (2) The argument of appellant that his tax bill being the last one issued in point of time, therefore added value to the property and enhanced the security of lien holders and by reason of this fact his tax bill should be declared superior to those of the respondents is answered by Brick Mfg. Co. v. Smith, 108 Iowa, 307.

*Clarence S. Palmer* for respondents, A. L. and J. O. West.

*Paxton & Rose, amici curiae.*

The analogy between a tax and tax bill is only partial. They both originate in the taxing power, but there the similarity ends. A tax is always a public lien and is always due to the government, while a tax bill, after its issue, is mere private property. All taxes, too, are owed to the same party, viz.: the government, so that the question of priority is not of any great moment; whereas the different tax bills on the same property are generally held by different private individuals, and so have become mere private liens with which the government has nothing further to do. This being true, we think the question of priority should be decided according to the law of private liens,

not according to the law of taxes, with which the tax bill itself has ceased to have anything in common. The turtle and the bird both come out of an egg; but in considering the treatment to be accorded these different animals, the one swimming in the water, and the other inhabiting the air, it is more appropriate to consider the animals as they are than to go back to the similarity of origin. "The accepted doctrine is that special assessments for local improvements, while, in a broad sense, referable to the taxing power, are not taxes for public purposes or taxes at all within the purview and the sense of the constitutional provision invoked or within the sense and purview of other sections of the article on revenue and taxation." Ranney v. Cape Girardeau, 255 Mo. 514.

## OPINION.

BOND, J.—Appellant here (plaintiff below) brought this action on a tax bill issued to him, as part payment, for doing paving work on Cleveland avenue in Kansas City, under authority of a valid ordinance. Amount of tax bill $725.28, and issued against lot 28, Indianapolis Place, in said city. The petition alleged that all the defendants named claimed some interest in the above-mentioned property, and prayed for the establishment of a prior lien on said property for the amount of said tax bill against all of the defendants.

The defendants answered, setting up that they held similar tax bills against said property issued to them for public work prior to that issued to the plaintiff, on some of which suits were then pending. The admissions of the parties established the facts stated in the pleadings. The court, over the objection of plaintiff, rendered a judgment sustaining his lien for the amount of his tax bill and interest against the property described in his petition, except against those defendants who had anterior tax bills, or had acquired interests

under suits on prior tax bills, and adjudged that such interests and titles in said defendants were not subject to the lien of plaintiff's tax bill.

After the overruling of a motion for a new trial plaintiff appealed to the Kansas City Court of Appeals. Upon the hearing of said appeal that court, after stating the above facts, rendered an unanimous opinion reversing the judgment of the trial court and remanding the cause with directions to give priority to plaintiff's lien, but on account of the conflict of that view with the decision of the St. Louis Court of Appeals, 150 Mo. App. 188, certified the cause to this court for final determination as provided in the Constitution.

As a prelude to what we shall say in this case, and because we concur in the conclusion of the Kansas City Court of Appeals as to the relative priority of the liens of tax bills for special assessments for public work in cities and towns, we herein copy the discussion of the Kansas City Court of Appeals, speaking through Judge TRIMBLE:

"With regard to all ordinary liens arising out of private contract and not imposed solely by governmental power, priority in time creates priority in force and effect, the first in order of time being, prima facie, superior to those of a later date. But the priority of the liens of general taxes is in the reverse of this order, the last is first and the first last. [2 Cooley on Taxation (3 Ed.), 875; Anderson v. Rider, 46 Cal. 134; Sayles v. Davis, 22 Wis. 225; Wass v. Smith, 34 Minn. 304.] This rule is well settled and is not disputed. The question is, however, whether there is any distinction to be made in this regard between the liens of general taxes and those of special taxes?

"The precise question was before the St. Louis Court of Appeals in Parker-Washington Company v. Corcoran, 150 Mo. App. 188, in which it was held that

the liens of special taxes for local improvements took priority in the same order as other ordinary liens, and not in the reverse order of their time as with those of general taxes. The decision is placed upon the ground that there is an essential distinction between general taxes and special taxes, and that in the absence of a statutory or (which is the same thing) a charter provision to the contrary, the lien of a special tax bill takes priority over another special tax bill in the same order as do other ordinary liens, that is, the first in point of time is prior to the later tax bills. Of course, if a statutory or charter provision exists which expressly or by necessary implication creates the reverse order of priority, then, by virtue of such provision, the distinction between the two kinds of tax liens is taken away, so far as the rule of priority as between different liens of the same kind or class is concerned. And the St. Louis Court of Appeals, finding no provision in the St. Louis charter which clearly gave such reverse order of priority, held that there was such a distinction between general and special taxes that the latter could not be given the same rule of priority which prevails with the former. It is true, as stated in that case, the rule is well settled with respect to both legal and equitable liens that, in the absence of statutory regulations to the contrary, the lien which is prior in time gives a prior claim and is entitled to satisfaction out of the subject-matter before other subsequent liens are paid. But an examination of the authorities cited by text-writers and others in support of the rule thus announced in such general terms, will disclose that the cases are dealing with ordinary liens arising out of private contract and not those created and imposed solely by governmental authority in the exercise of the taxing power. Consequently, a statement of the general rule of priority with respect to ordinary liens can aid but little in determining the rule of priority of special tax liens with

reference to each other, because, at last, it all comes down to the question whether there is any such inherent difference and distinction between the liens of special taxes and those of general taxes as will require the rule of priority in the one to be different from that of the other.

"When the two kinds of taxes are considered for the purpose of determining this question it will be found that there is not such an inherent difference between them as to place the liens of special taxes merely in the category of ordinary liens. It is true, general taxes are levied for the support of the government and in that sense general taxes are the more important of the two and ought to take precedence over special taxes, so that the lien of a general tax ought to be prior to the lien of a special tax, even though the latter be prior in point of time. But that is not the question here. The question now is as to the rule of priority as between the different liens of different special taxes. And the precise inquiry now at hand is, what essential or inherent difference is there in the nature of special taxes which deprive their lien of a rule accorded to the lien of general taxes? Both are created by acts of the sovereign power exercised for the public good. In both the taxing power operates *in rem*, that is, on the property itself without regard to different or conflicting interests of ownership; in fact, in total disregard of any liens or interests attached thereto. The proceedings to collect both are proceedings *in rem*. And 'the general and universal rule is that in proceedings *in rem* to enforce the payment of taxes the last tax levied and sought to be enforced is superior and paramount to the lien of all other taxes, claims or titles.' [2 Cooley on Taxation (3 Ed.), 875.] The Supreme Court of our State in the case of Morey Engineering & Const. Co. v. Ice Rink Co., 242 Mo. 241, l. c. 256-7, discusses the question whether the same

principles applicable to general taxes are not equally applicable to special taxes and reaches the conclusion that they are. The court says both are created by the sovereign power of the State for the public good; that while in a number of opinions special taxes are said not to be taxes in a certain sense, yet that by this is meant only that they do not come within the taxes referred to by certain constitutional provisions establishing limitations as to the amount to be levied for the purpose of general revenue; that while a special tax is not a general tax for the support of the government, yet it is a tax imposed by the same sovereign power for the same general purpose—the general good. And on page 258 of the same case the Supreme Court say that on principle the same ruling should apply to both; the exigencies of government require that special taxes be levied, and the necessity for their prompt and certain collection is surely great enough to demand that classification which will insure those ends.

"It would seem that any distinction drawn between the two kinds of taxes which would relegate the liens of special taxes to the same class as ordinary liens arising out of private contract would be, to that extent, a shortening of the sovereign power to impose such taxes. If the lien for special taxes which is first in point of time can supersede all similar liens coming after it, then when once the sovereign power has levied such a tax, it must perforce wait until that tax has been removed according to the sweet will and pleasure of the owner of the land and the holder of the tax bill, before another can be levied. In this way the wheels of progress could be blocked, or at least effectually impeded. In this very case the tax bill sued on is for *paving* Cleveland avenue, and was authorized November 10, 1910, and the tax bill was issued May 1, 1911; while one and possibly two of the other tax bills claiming to be superior is for *grading* the same avenue au-

thorized as far back as October, 1907, and two others are for paving a near-by street and sewer construction begun as far back as December, 1903. The argument that the taxing power ought not to levy a special tax and give a lien therefor and then be allowed to destroy that lien by subsequently levying another tax and giving a lien paramount to the other, is more plausible than forceful. And the same argument would apply equally well to the lien of general taxes. It is said with regard to the latter that when one buys property at a general tax sale, the moment he acquires the property it becomes his duty to pay all subsequent taxes levied thereon, and therefore it is no wrong nor hardship to make the lien of the last tax superior to the tax under which he bought. Quite true, and so does it becomes the duty of one who buys at a special tax sale to pay all subsequent special taxes levied thereon for the public good. And it would seem to be less of a hardship in such case than in the case of general taxes, since the special taxes benefit the property directly, while the general taxes only remotely. Suppose the defendants in this case had energetically enforced their liens, instead of letting them lie as they seem to have done, and had purchased the property in question, could any one say that the city could not at once thereafter have levied another special tax on the property for another improvement? In such case the new owner would have to pay off the lien thereof or lose his newly acquired property. And if the taxing power could lawfully do this what wrong would it be perpetrating upon such purchaser if it levied the tax before he chose to make his purchase? In fact, any argument based upon any notions of so-called wrong or injustice in the case of a special tax applies equally well, and some times with more force, to the case of a general tax. The question, however, goes deeper than any such considerations, and involves the question

whether there is, in reality, such a distinction between the two classes of taxes as to justify the application of a different rule, and whether the sovereign power can be impeded or hampered by any such distinction.

"In arriving at a determination of the question involved, not a great deal of assistance is to be derived from the decisions of other States, since there are not many of them upon this precise question. And some of these are based upon the peculiar wording of a particular statute, and, in others, different States have reached contrary conclusions in cases where their respective statutes were practically the same.

"It is true that in the Morey case above mentioned, 242 Mo. 241, the question was between the lien of a special tax bill and that of a prior deed of trust, but it would seem to be clear from the majority opinion in that case that there is no such distinction between the nature of special taxes and general taxes as to deprive the former of the rule of priority, as between themselves, which is accorded to the latter. In other words, special taxes do not have to have an express statutory provision giving such rule of priority, but have it by reason of their partaking of the same essential nature and importance of general taxes—both being acts of the sovereign taxing power exercised for the public good. If, without such statutory provision, a special tax lien is superior to that of a prior private lien, such as a deed of trust, then such tax lien has it by virtue of the fact that it partakes of the same nature and characteristics of a tax as does a general tax, and is therefore entitled to the same rule of priority, at least as between itself and all other special tax liens and private liens.

"If statutory authority be required, however, it would seem to be implied (or at least not denied therein) from the following found in the City Charter, article 8, section 22:

" 'Any person owning or interested in any tract of land against which a special tax bill may be issued under the provisions of this charter may pay the same to the city treasurer, whose duty it shall be to receive the amount thereof without charge or commission,' etc. And also section 24 of the same article, to-wit:

" 'No tax bill need give the name of any party owning or interested in the land charged thereby . . . All or any of the owners of the land charged, or of any interest or estate therein, may be made defendants in any suit upon a tax bill and the right, title, interest or estate of the parties made defendants in any such suit shall be bound thereby.'

"As said in the Morey case, this provision is meaningless unless it enables those holding a lien upon lands in the city to protect themselves by paying the subsequent special tax, without charge or commission, to which their interests are subordinate. If their interests are not subject to the special tax why should they be referred to in connection with its payment? The words 'any person interested in any tract' in section 22 are broader than and are not synonymous with the words 'having an estate in any tract,' and the words in section 24 'owners of the land *or* of *any* interest *or* estate therein' include others than merely those holding a technical estate in said lands. But the above provisions of the city charter are not sufficiently express to give special tax liens the reverse order of priority accorded general taxes, unless both so far partake of the same essential nature as to entitle special tax liens to such rule of priority at least as between themselves and as between them and all other liens not amounting to the dignity of general tax liens. The inference to be drawn from the Morey case is that they do partake of this same nature, and do not depend upon the positive enactment of a statute to give them the same rule of priority. If this be the correct deduc-

tion to be drawn from the Morey case, it follows that the judgment should be reversed and the cause remanded with directions to give priority to plaintiff's lien. But inasmuch as this view is in conflict with the decision of the St. Louis Court of Appeals in the Parker-Washington case, 150 Mo. App. 188, the case is ordered certified to the Supreme Court for final determination. In this way the question here involved can be put at rest and all doubt thereon can be resolved and settled. All concur.''

In further illustration of the correctness of the result reached in the foregoing opinion by the Kansas City Court of Appeals, we desire to say:

The power to assess private property for public improvements, beyond the uniform rate prescribed by the Constitution, is derivable only from the fast that such property is enhanced in value to the amount of the tax beyond that of other citizens, *by* the public betterment. Any assessment not thus bottomed is void. Upon this basis only can the Legislature, through its auxiliaries in government, exert its taxing power for the construction and repair of streets and other public purposes. Hence, provision is made in the charters of cities and towns that the private owners shall pay only that portion of the tax represented by the moneyed increase in the value of their respective property, and that the remainder of the tax must be paid out of the general revenues of the municipalities. It is on this principle alone that special assessment can be laid upon private property for public improvements and other works necessary to urban life.

None the less, however, the impositions thus made are strictly referable to the taxing power of the State lodged in the Legislature subject to the limitations of the Constitution, and such exactions are, in their essence, just as much taxes as are those which are collected for the support of the government itself. The

264Mo45

fact that a contractor for public work is permitted to enforce *a portion* of his compensation for the doing of such work from abutting property owners by a direct action upon a tax bill fixing the amount to be collected from them, is to avoid circuity of action and to enable the municipality to collect in that way the *incidental benefit* which the public work prosecuted by it has afforded to particular citizens over all others. The result would be exactly the same if the city in the first instance paid out to the contractor the *whole* of his compensation, and afterwards collected from particular private owners the amount of the enhancement in value of their respective property. It is apparent therefore, as has been uniformly held in this State, that the whole process of making public improvements in cities and towns which involves the taxing of particular property, is in its essence the exercise by the State through one of its delegated agencies of the taxing power lodged in the Legislature.

Special assessments are in the strictest sense of the terms charges on a physical property and proceedings to enforce them are *in rem* or against the thing itself. The authority under which they are laid fixes a lien upon the property as an equivalent of a permanent increment of its value by the public improvement or work for which the assessment was part payment, and assesses a tax bill to the contractor evidencing his right to recover that portion of his compensation for the doing of a needed public work.

Upon that theory the same basis exists for such a lien as that created by courts of equity in railroad receiverships for the betterment work done on the earnings of the property in the hands of the court and which, to the extent of the payment for such additions, displaces *pro tanto* all prior mortgages and liens, including those for which the suit was instituted, as well as the claims of general creditors. [Van Frank v.

Railroad, 89 Mo. App. 1. c. 499, and cases cited.] The foundation of this principle is justice, if not necessity. For it would be inequitable to permit prior encumbrancers in the enforcement of their liens to realize the *added* value which has been put in the property charged by the labor of others necessary to its protection or the uses to which it must be applied, pending proceedings for the enforcement of the rights of encumbrancers, without subjecting such encumbrances to the cost and outlays thus subsequently incurred. So, in this case, the last special tax was for an equivalent addition to the value of the property on which prior similar taxes were encumbrances. The charter of Kansas City provided that each should be a lien on the thing benefited, necessarily thereby providing that the last lienor should have preference over the former, who, as to him, stood merely in the relation of persons interested in the property improved, and hence within the very terms of the charter providing that all such might be made parties to a suit like the present, or that all such might make payments of charges like the present tax bill. [Kansas City Charter, art. 8, sec. 22.]

From these principles the corollary follows, that there is no essential distinction between a special tax constitutionally laid for special public purposes and a general tax laid for the administration of the government of the State. And that the rules of reverse priority applicable in the collection of successive general taxes, necessarily apply to the collection *inter sese* between successive special assessments laid for public improvements in cities and towns. We think, therefore, that the Kansas City Court of Appeals in this case has reached a correct conclusion, and that the decision of the St. Louis Court of Appeals was erroneous and should not be followed. The judgment of the circuit court is reversed and the cause remanded for proceedings in conformity with this opinion. *Woodson,*

*C. J.,* and *Faris, J.,* concur; *Brown, J.,* concurs in result; *Graves* and *Blair, JJ.,* dissent;*Walker, J.,* dissents in separate opinion.

WALKER, J. (Dissenting.)—I do not concur in the majority opinion. The conclusion reached therein, as well as in that of the Kansas City Court of Appeals, is based upon the theory that statutes authorizing special assessments are acts inherent in sovereignty and if a lien is created it should be construed as are liens of judgments for general taxes. The priority of liens for general taxes over other charges on real estate is held by this court in Morey Engineering & Construction Co. v. Ice Rink Co., 242 Mo. 241, to exist independent of legislative action. Granting the sovereignty of the State and its power to provide means for its existence, this power to create a lien must have had an origin either in the common law or a statute. At the common law there was no rule which made a levy and assessment of taxes *ex proprio vigore* a lien on land. The lien then, if it exists, must have its origin in a statute. An examination of the laws of this State from 1820 (Laws 1820, p. 97) to the revision of 1909 (Sec. 11499, R. S. 1909) discloses that we have had throughout our judicial history an express statute declaring a judgment for general taxes a first lien on the land assessed. This fact is in effect admitted by the majority opinion in the Morey case, and amply suffices for the existence of the rule as to priority in regard to general taxes without a resort to abstract reasoning in regard to sovereignty, necessity, etc. While the State's necessity may originally have impelled the Legislature to create a lien giving a judgment for general taxes priority over other charges on land, if then created it did not previously exist. If the right to the lien existed independent of statute, what reason or necessity prompted legislative action in the first in-

stance and has subsequently perpetuated the act for almost a century?

We are not concerned, however, with the doctrine announced in the Morey case relative to the priority of a lien for general taxes except to note what we deem a fallacy therein in regard to the origin and source of the lien as affecting the doctrine announced concerning the priority of liens for special taxes; and in the latter, we are only concerned in determining whether the last created lien takes priority over those of the same character but of an earlier date.

Before discussing the matter which constitutes the core of this controversy, some further reference to the doctrine of sovereignty as sought to be applied to special assessments is not improper. Let us see how far the reasoning supporting the doctrine of sovereignty of the State in regard to general taxes can be applied to special taxes levied by a municipality. The latter, in the exercise of its power of eminent domain, either under its charter or by virtue of an ordinance, authorizes public improvements, prescribes therein how the work shall be done and the manner in which the contractor shall be paid. Usually in such charter or ordinance a lien is created which becomes a charge upon the lot owner's property to secure the payment of his proportion of the improvement. Thereafter all semblance of the city's sovereignty, if it can be so entitled, ceases, and the matter becomes one of obligation between the lot owner and the contractor— the former's liability being, of course, limited to the lot affected by the improvement. No question of public necessity exists, but solely one of improvement or the betterment of the condition of the city, in which it seeks through the charter or ordinances to facilitate action and insure completion of the work by taking the initiative and directing the work.

This court, in recognition of the distinctive differences between general taxes and special assess-

ments, recently said that the latter, while in a broad sense referable to the taxing power, were not taxes for public purposes or taxes at all within the purview of the Constitution relating to uniformity of taxation or of other sections of the article on revenue and taxation. [Ranney v. Cape Girardeau, 255 Mo. 514.] If special assessments for street improvements are not for public purposes, as the Ranney case holds, then the liens created to enforce the payment of such assessments bear no analogy to liens for general taxes and the argument as to the inherent rights of sovereignty in the creation of such special liens goes for naught. In the absence, therefore, of a rule of the common law, and the doctrine of inherent sovereignty being confined, if it exists, to liens for general taxes, and there being no general statute in relation to same, the intelligent determination of the matter at issue requires an examination of the charter and ordinances of Kansas City.

Preliminary to this examination and in support of the conclusion that charges on land of the character here under review are of purely statutory origin, this court has several times held that in the absence of an express charter or statutory authority a municipality has no power to create a lien for taxes imposed by it. [Jefferson City v. Whipple, 71 Mo. 519; Kansas City v. Payne, 71 Mo. 159; Schmidt v. Smith, 57 Mo. 135.]

Kansas City is governed by a special charter. Under a general statute (Sec. 9752, R. S. 1909) the city is given exclusive control over its public highways, streets, alleys and public places. This statute confers ample power on the city to provide in its charter or by ordinance for public improvements, such as the grading and paving of streets. As a consequence we find in section 22, article 8, of the charter, the following provision: "As soon as the cost of any work, payable in special tax bills . . . has been assessed

against the tracts of land chargeable therewith, the Board of Public Works shall, at the time of delivering the tax bills to the contractor, . . . certify such apportionment and assessment to the city treasurer, etc." In the same article (8), section 24, of the charter it is provided that: "every special tax bill issued under the provisions of this article shall be a lien on the land described therein *upon the date of the certification thereof to the city treasurer,* as in this article provided."

If any question can arise as to the date of the commencement of the liens under these charter provisions, the following rulings in analogous cases become pertinent: In Haag v. Ward, 186 Mo. 325, while the date of the commencement of the lien was not the matter in issue, the court held, under the charter then in existence (1899), that "every special tax bill shall be a lien on the lands *on the date of the receipt to the Board of Public Works therefor;*" and in Buchanan v. Kansas City, 208 Mo. l. c. 681, in discussing certain condemnation proceedings there involved, it was held that assessments for benefits under the charter of Kansas City (section 20, article 10) constituted a lien *from the date of the taking effect of the ordinance* in pursuance of which the assessments were made. Elsewhere a like rule obtains as to the date of the commencement of the lien: Cemansky v. Fitch, 121 Iowa, l. c. 188; Meadville v. Dickson, 129 Pa. St. l. c. 8; Eagle Mfg. Co. v. Davenport, 101 Iowa, 493; 2 Cooley, Taxation (2 Ed.), 871; 4 Dillon on Municipal Corporations (5 Ed.), sec. 2485.

From the charter provisions cited, and in the absence of any general statute on the subject, we must conclude that liens for special tax bills exist only under the authority of the charter. It has been held in a number of other jurisdictions that liens thus created must be measured as to their commencement, duration,

limitation and priority by the statute of their origin. [Lyon v. Alley, 130 U. S. 177; United States v. Railroad, 4 Dill. (U. S. C. C.) 71; Heine v. Levee Commrs., 19 Wall. (U. S.) 655; Sheffield City Co. v. Tr. National Bank, 131 Ala. 185; Binkert v. Wabash Railway Co., 98 Ill. 205; Fisher v. Brower, 159 Ind. 139; Garrettson v. Scofield, 44 Iowa, 35; Jaffray & Co. v. Anderson, 66 Iowa, 718; Fuller v. Day, 103 Mass. 481; Ky. Cent. Ry. Co. v. Commonwealth, 92 Ky. 64.] Nor can such liens arise by implication from the power to tax, but they must be expressly created by statute (Maish v. Bird, 22 Fed. 180; Fisher v. Brower, supra; State v. Bellin, 79 Minn. l. c. 134; Philadelphia v. Greble, 38 Pa. St. 339; Philadelphia v. Anderson, 142 Pa. St. 357); and when so created they cannot be enlarged by construction, and the law under which they exist must be strictly construed (Gudger v. Bates, 52 Ga. 285; Phelan v. Smith, 22 Wash. 397; Jaffray & Co. v. Anderson, 66 Iowa, 718); and a statute creating such liens will not be held to be retroactive unless it clearly appears to have been the legislative intent (Burnet v. Dean, 60 N. J. Eq. 9; Pittsburg's Appeal, 40 Pa. St. 455; Clark v. Hall, 19 Mich. 356).

The liens here under consideration being, as we have shown, of statutory, or, more specifically, of charter origin, they must be considered in accordance with the law of their creation. This provides that they shall attach upon the date of their certification by the Board of Public Works to the city treasurer (sections 22 and 24, article 8, charter of Kansas City). An examination of the charter explains the reason why the time stated is fixed for the beginning of the lien. When the cost of the work payable in special tax bills has been determined, the same is assessed against the tracts of land chargeable therewith and the Board of Public Works certifies the apportionment and assessment of such cost to the city treasurer. Until this has been

done no levy of tax has been made against the land, and no lien can therefore attach. [Cemansky v. Fitch, 121 Iowa, l. c. 189.] If no lien can attach until the time stated, and the law giving the lien must be strictly construed and can have no retroactive force, as many authorities cited attest, then liens for special assessments under the charter of Kansas City become effective only in the order of the dates of their respective certifications to the city treasurer. To hold otherwise would be to declare a lien created before the tax on which it is based had been levied.

In harmony, therefore, with the opinion of the St. Louis Court of Appeals in the well reasoned case of Parker-Washington Co. v. Corcoran, 150 Mo. App. 188, we are of the opinion that the judgment of the circuit court should be affirmed.