[L. A. No. 4930. Department One.—July 5, 1919.]

WOODILL & HULSE ELECTRIC COMPANY (a Corporation), Appellant, v. GEORGE YOUNG et al., Defendants; EMPIRE SECURITIES COMPANY (a Corporation), Respondent.

[1] STREET LAW — RANK OF LIENS — SUPERIORITY OF SUBSEQUENT LIENS.—Street assessment liens are essentially tax liens imposed by public authority for a public purpose upon a *res,* and the same compelling reasons which have led to the practically universal recognition of the rule that a subsequent lien for general taxes is superior to a prior lien of the same sort lead to the same conclusion with regard to street assessment liens.

APPEAL from a judgment of the Superior Court of Los Angeles County. H. T. Dewhirst, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Richard J. O. Culver for Appellant.

Crouch & Crouch and Gibson, Dunn & Crutcher for Respondent.

Chas. A. Gray, Arthur M. Ellis, Charles S. Burnell, City Attorney of Los Angeles, C. W. Guerin, City Attorney of Pomona, Harry A. Chamberlain, City Attorney of Vernon, M. Estudillo, City Attorney of Riverside, Jeff G. Wingert, City Attorney of Whittier, W. R. Garrett, City Attorney of Orange, W. P. Butcher, City Attorney of Santa Barbara, G. H. Scott, City Attorney of Santa Ana, H. G. Ames, City Attorney of Anaheim, Victor R. McLucas, City Attorney of Santa Monica, Benjamin F. Warner, City Attorney of Ontario, and George Lull, City Attorney of San Francisco, *Amici Curiae.*

OLNEY, J.—This is an appeal from a judgment in an action to foreclose certain street assessment liens on two parcels of land. The defendants in the action were the original owners of the property upon which the plaintiff's liens were imposed, and the owner of certain other street assessment liens on the same

property. These latter liens had been imposed prior to the imposition of the plaintiff's liens, and were for work done under proceedings initiated prior to the proceedings under which the plaintiff's work was done. Intermediate the imposition of the plaintiff's liens and the commencement of the action, street improvement bonds representing the assessments of the defendant lienholder were issued, default made upon such bonds, and the property sold to the lienholder to satisfy the bonds.

The original owner of the property defaulted in the action, which thereafter proceeded as between the lienholders only. The sole question presented was one of priority between the two sets of liens and this was determined in the lower court against the plaintiff, who appeals.

The appellant's contention is that street assessment liens are liens which are imposed upon the property without the owner's consent under the taxing power of the state, that they are imposed upon the property as such so that every right or interest in the property is included in the subjection to the lien, with the result that a prior lien, even one itself for a street assessment, is subject to it. The respondent's contention is that the rule generally applicable to contractual liens applies and that the one prior in time is prior in right.

The question as presented is a novel one in this state, unless *Brady* v. *Burke,* 90 Cal. 1, [27 Pac. 52], can be considered as determining it. The action in that case was one to quiet title and the plaintiff claimed as the purchaser at a foreclosure sale in an action brought to foreclose a street assessment lien. Certain of the defendants claimed as the purchasers at foreclosure sales in actions to foreclose other street assessment liens. The lien foreclosed by the sale to the plaintiff was prior in time to the liens foreclosed by the sales to the defendants, but the latter existed at the time of the commencement of the foreclosure action resulting in the sale to the plaintiff, and the defendants were not made parties to that action, with the result, as claimed by them, that their rights had not been foreclosed by the sale to the plaintiff. Under these circumstances the court inquired into the validity of the proceedings under which the defendants claimed, held them to be invalid, and upon this ground affirmed the judgment quieting the plaintiff's title as against them. The liens under which the defendants claimed being held to be invalid *in toto,*

the decision did not involve a determination of their rank, if valid, with respect to. the liens under which the plaintiff claimed. In the course of the opinion, however, it is said "although the sheriff's deeds made to appellants Wood and Riggins [the defendants] antedated those of plaintiff and are based upon judgments rendered prior to those under which plaintiff claims, yet, as the liens under which plaintiff's title has its origin are older than the liens to which the deeds of appellants relate, plaintiff had the superior legal title," citing *Littlefield* v. *Nichols,* 42 Cal. 374. It does not appear whether there was any contention over the question of rank as between the liens, if valid, and there is no discussion of the matter in the opinion. All that appears is the statement quoted and the citation of *Littlefield* v. *Nichols* in support of it. But the liens involved in *Littlefield* v. *Nichols* were not imposed by superior public authority, but were contractual, and, furthermore, no question as to their rank was involved. The point determined was merely that as between conflicting foreclosure or execution sales, that one was superior which was based upon the superior lien. It must be that it was to this point and to this point alone that it was cited in *Brady* v. *Burke, supra.* Our conclusion is that the bald statement in *Brady* v. *Burke* cannot be taken as a governing determination of the question now squarely presented, and that we are at liberty to determine it upon its merits.

The question has arisen in other jurisdictions and has been there decided. The decisions, however, are conflicting. Supporting the appellant's position are *Morey* v. *Duluth,* 75 Minn. 226, [77 N. W. 829]; *Burke* v. *Lukins,* 12 Ind. App. 648, [54 Am. St. Rep. 539, 40 N. E. 641]; *Jaicks* v. *Oppenheimer,* 264 Mo. 693, [175 S. W. 972]. Supporting the respondent's position are *Philadelphia* v. *Meager,* 67 Pa. St. 345; *Scott-McClure Land Co.* v. *Portland,* 62 Or. 462, [125 Pac. 276]; *Bell* v. *New York,* 66 App. Div. 578, [73 N. Y. Supp. 298]; *Des Moines Brick Co.* v. *Smith,* 108 Iowa, 307, [79 N. W. 77].

In spite of this conflict, however, we believe that the underlying principles, by whose application the question must be decided, are clear and lead with certainty to the conclusion that in liens of this character, imposed on property—that is, on a thing itself regardless of ownership—by public authority for a public purpose, the one last imposed is paramount.

No question is made but that this is the well-established rule as to liens for general taxes. It is so held almost universally and has been so decided in this state. (*Anderson* v. *Rider,* 46 Cal. 134, 138; *Dougherty* v. *Henarie,* 47 Cal. 9, 14; *Chandler* v. *Dunn,* 50 Cal. 15; *California etc. Co.* v. *Weis,* 118 Cal. 489, [50 Pac. 697].) The reason for it is concisely stated in *Dougherty* v. *Henarie, supra,* thus: "The necessity of collecting revenue for the support of the government imperatively requires that the lien for taxes shall take precedence over all other liens; and that a tax sale, followed by a proper conveyance, shall transfer the title discharged of prior tax liens. If the rule were otherwise, purchasers at tax sales would be deterred from bidding, and a large portion of the revenue would remain uncollected."

Such being the rule and the reason for it in the case of conflicting general tax liens, the question arises, What reason is there for not applying the same rule to the case of conflicting street assessment liens, or possibly putting it more accurately, does the reason for the rule as between general tax liens apply as between street assessment liens? Now, fundamentally the principle in the case of general tax liens is that the law for the purpose of insuring a payment required for a public purpose creates a lien for such payment, not upon any particular interest or set of interests in the property, but upon the property itself as such, so that all interests in it of every nature are made subject to the lien, with the result that although there may be no explicit statutory provision, there is implicit the rule that the tax lien shall be paramount to all other prior existing liens, even to prior existing tax liens.

The case of street assessment liens under our statute comes exactly within the foregoing principle. The assessment is one for a public purpose. To insure its payment it is made a charge, not against any person, owner of property or otherwise, but against the *res* itself. So much has already been decided by this court. (*German etc. Society* v. *Ramish,* 138 Cal. 120, [69 Pac. 89, 70 Pac. 1067].) In this case it was held that a street assessment lien was paramount to the lien of a mortgage. Now, the lien of a mortgage is not of the same character as a public assessment lien, and so far the decision mentioned cannot be said to be determinative of the present case. But the reasons given for the decision are exactly those for the rule as between conflicting tax liens, viz., that for the

purpose of insuring a payment required for a public purpose a lien is placed on property paramount to all existing interests therein. It is said:

"Whether the power to tax for street improvements is to be referred to the general taxing power and the power of eminent domain, or, as some courts have suggested, to the police power, is not very important. Whatever its source may be, it exists beyond question by reason of its nature and objects, and that it partakes of the nature of the taxing power must be admitted. The power to levy a tax for general purposes, which shall be a lien superior to all other liens, prior or otherwise, is not doubted, and it is not because it is called a tax, but because of its object and the necessity for raising revenue in order to execute the functions of government. In modern times, whatever may have been the demands of society in an earlier period of the development of government, the necessity for improving the streets of cities and towns, while perhaps less important in degree than the general objects of government, is yet important and necessary to the welfare of the whole community, and in our opinion the principles on which the system of general taxation depends, and which govern in the enforcement of tax levies for general purposes, are also applicable to taxation for the improvement of streets, the construction of sewers, and other like public work. It is a mistaken assumption that the improvement of a particular street in a city is solely for the benefit of adjoining property owners; the benefit accrues to the public generally, and the power to compel such improvements is essential to the well-being of communities. The Bond Act expressly provides that the lien of the bonds shall be 'a first lien upon property' (Stats. 1893, sec. 4, p. 36); and section 5 also makes the provisions of the law for the collection of delinquent state and county taxes applicable to sales under the Bond Act. (Pol. Code, sec. 3788.) The intention seems to be clearly manifested that the bond lien shall be prior to all liens. The view we take of the statute makes it unnecessary to inquire as to the effect of the lien which attaches upon the recording of the warrant. If we are to protect prior mortgages against the lien, how can we in reason take from the owner his title, which antedates the mortgagee's interest?"

The assessments in question here were not levied under the same act as those in *German etc. Society* v. *Ramish, supra,* and the statutory provisions are not exactly the same. But the essential thing, the intent to make the lien a paramount one upon the property, is present in both statutes (secs. 23, 63 and 66 of the act of April 7, 1911, Stats. 1911, p. 730).

Such being the character and purpose of street assessment liens, and that character and purpose being the same as those of general tax liens, so far as this phase is concerned, it necessarily follows that the rule as to priority between conflicting tax liens should be the rule as to priority between conflicting street assessment liens.

Much might be said by way of amplification. Much is said, and exceedingly well said, in *Jaicks* v. *Oppenheimer,* 264 Mo. 693, [175 S. W. 972], but we quote only the following: ''When the two kinds of taxes are considered for the purpose of determining this question, it will be found that there is not such an inherent difference between them as to place the liens of special taxes merely in the category of ordinary liens. It is true, general taxes are levied for the support of the government, and in that sense general taxes are the more important of the two and ought to take precedence over special taxes, so that the lien of a general tax ought to be prior to the lien of a special tax, even though the latter be prior in point of time. But that is not the question here. The question now is as to the rule of priority as between the different liens of different special taxes. And the precise inquiry now at hand is, What essential or inherent difference is there in the nature of special taxes which deprive their lien of a rule accorded to the lien of general taxes? Both are created by acts of the sovereign power exercised for the public good. In both the taxing power operates *in rem,* that is, on the property itself without regard to different or conflicting interests of ownership; in fact, in total disregard of any liens or interests attached thereto. The proceedings to collect both are proceedings *in rem.* And 'the general and universal rule is that in proceedings *in rem* to enforce the payment of taxes the last tax levied and sought to be enforced is superior and paramount to the lien of all other taxes, claims or title.' (2 Cooley on Taxation, 3d ed., 875.) ''

The principal reasons advanced in opposition to the foregoing view are (1) that it permits the municipality or other

public authority to give one party a lien and then, without his consent and against his will, displace and perhaps destroy it by creating another lien in favor of another party; and (2) that it will defeat the purpose of the statute by preventing contractors from taking work through fear of subsequent liens.

As to the first of the reasons, it will occur immediately that it is equally applicable to liens for general taxes where admittedly the subsequent lien is the superior. No reason is apparent why the holder of a street assessment lien should be more favored than a purchaser at a tax sale. But the real fallacy in the argument lies in its overlooking the fact that all property and every interest in property, no matter how acquired or what its origin, must be held subject to the right of subsequent taxation, both general and special, and that any foregoing of this right by the state must be most exceptional. Yet there is just such an exception if the interest of a street assessment lien—an interest which is purely private property although public in its origin—is not to be subjected to subsequent liens for public improvements. There is, in fact, no more displacement or destruction of the earlier lien by the imposition of the later than there is a displacement or destruction of any other right in the property by the imposition of a street assessment lien.

The second objection, that the doing of public work will be hampered because contractors will be reluctant to undertake work if their liens are to be subject to liens for subsequent work, is, we believe, almost entirely fanciful. The same reason would apply to any acquisition of property which could not be concealed from the taxing authorities, and as yet there has not been observed any great reluctance to purchase real estate, which cannot be so concealed, or to loan money secured by lien upon it, although it is well understood that real estate and any mortgage lien upon it may at any time be subjected to assessment for public work.

On the other hand, to hold that a street assessment lien is superior to any subsequent lien of the same character would most certainly interfere with the making of public improvements and seriously tend to frustrate the purpose of the statute. The lien of the assessment exists for two years, and if suit to foreclose is brought the lien exists until the termination of the suit. If such a lien is superior to any similar

subsequent lien, there would be nothing to prevent the owner of property assessed from purchasing the lien, concealing the fact of purchase, having suit brought to foreclose the assessment and then tolling the suit along indefinitely, thereby prolonging the apparent lien, and quite effectually deterring any bidding for work which could be paid for only by an assessment subordinate to the lien already on the property. If bonds are issued to represent the assessment, as was done in this case, the possibility of obstructing the making of public improvements is still greater, for the life of the bonds is ten years and during this whole period any contractor doing public work payable by assessment must take a second lien.

Finally, the point is made by *amici curiae,* arguing in support of the respondent's position, that the statute provides that the "assessment shall be a first lien . . . until . . . fully paid. . . . " They argue that if the assessment is to be a first lien until paid, it necessarily follows that any subsequent lien must be subordinate to it. But this result is but one horn of a dilemma which presents itself, if we assume that the language quoted was intended to include the case of conflicting liens under the statute. The language is just as applicable to an assessment for subsequent work as to the one first imposed. In other words, the statute declares equally as well in the case of the second assessment as in the first, that the lien shall be a first lien. But such lien can be first only if it is superior to the lien of the first assessment. The only escape from the dilemma thus presented is to conclude that the statute intended that when once a lien for street work is imposed on property, no further improvement of a similar character can properly be made until such lien has been discharged by payment. Such a result, of course, would be subversive of the very purpose of the act, and it is inconceivable that it was intended.

The true answer to the dilemma is that the language quoted was not intended to apply to the case of conflicting liens, both under the same statute. It cannot so apply, since it would make both liens, though in conflict, first liens, a manifest impossibility. The correct construction of the statute is, that by the language quoted nothing more was intended than to declare the general proposition that a street assessment lien should be a first lien on the property. The result

is that the statute contains nothing governing the ranking of conflicting liens, each imposed under the statute, and such ranking must be determined by the general principles applicable to liens of that character. As to those general principles we have no doubt. **[1]** Such liens, so far as any phase of the matter here material is concerned, are essentially tax liens imposed by public authority for a public purpose upon a *res,* and the same compelling reasons which have led to the practically universal recognition of the rule that a subsequent lien for general taxes is superior to a prior lien of the same sort lead to the same conclusion with regard to street assessment liens. It follows that the conclusion of law of the trial court that the assessments and bonds of the defendant Empire Securities Company are respectively liens prior and superior to the liens of the plaintiff is incorrect.

The judgment is reversed and the lower court is directed to enter judgment subjecting to foreclosure the interests of the Empire Securities Company in the property as well as the interests foreclosed by the present judgment.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred.