# MARCH, 1938.

FRANK A. STIERS, PLAINTIFF, APPELLANT, v. CLAUDE E. VROOMAN, LYDIA VROOMAN AND THE CITY OF ST. LOUIS, A MUNICIPAL CORPORATION, DEFENDANTS, RESPONDENTS.—115 S. W. (2d) 84.

St. Louis Court of Appeals. Opinion filed April 5, 1938.

*Chas. M. Hay,* City Counselor, *Jno. T. Hicks,* Associate City Counselor, and *Francis J. Sullivan,* Special Associate City Counselor, for respondent.

*Greensfelder & Hemker* for intervener.

BENNICK, C.—This is a suit to enforce the lien of a special tax bill which was issued by defendant City of St. Louis, in favor of plaintiff, Frank A. Stiers, a contractor. Defendants Claude E. Vrooman and Lydia Vrooman are the owners of the property against which the special tax was assessed as the proportionate share of the cost of certain public improvements for which such proerty was chargeable.

The special tax bill, which was for the sum of $72.10, was issued by the city on September 3, 1926. There is no question but that it was lawfully issued and delivered to plaintiff; that it became a lien on the property from and after the date of its issuance; and that the owners of the property defaulted in the payment of the same.

The city was made a part defendant to plaintiff's suit to enforce the lien of the special tax bill because of an interest the city was claiming in the property under and by virtue of a benefit judgment for $28.50 which had been rendered in its favor by the Circuit Court of the City of St. Louis in a certain condemnation proceeding involving a street widening project. Said judgment had been rendered on November 6, 1931, and, as in the case of the special tax bill, was also a lien upon the property.

The controversy in the case, which was wholly between plaintiff and the city, was whether plaintiff's lien under his special tax bill should be adjudged to be a first lien, prior, superior, and paramount to the lien of the city under its benefit, judgment, or whether, to the contrary, the two liens should be accorded parity, with both plaintiff and the city to share in the proceeds of the sale of the property in the proportion that the lien of each bore to the total amount of their combined liens.

The court found that as to priority the two liens were on a parity with each other, and adjudged that if, upon a sale of the property, the amount realized from the sale, after the payment of costs, should be insufficient to discharge both liens in full, then plaintiff and the city should share in the proceeds of the sale in the proportion that the amount due each of them bore to the aggregate of their combined liens.

From such judgment plaintiff prayed for and was allowed an appeal to the Supreme Court, and while the appeal was pending in that court the Sterling National Bank & Trust Company, which alleged that it was the owner and holder of special tax bills issued by the city in an amount in excess of $18,000, was allowed to intervene in the cause. Subsequently the Supreme Court held that it was without jurisdiction to hear and determine the cause, and consequently ordered that the same be transferred to this court for our determination.

164

The uncertainty in this case is due to the apparently conflicting language of two provisions of the Charter of the City of St. Louis, the one being Article XXI, Section 8, and the other Article XXIII, Section 5.

Article XXI, which has to do with the subject of condemnation, outlines the procedure which is to be followed whenever the city undertakes to condemn private property for public use. It provides, among other things, that the city shall file its petition in the circuit court, whereupon commissioners shall be appointed, who, after viewing the property and assessing the damages and benefits, shall file their report with the court. Section 8 then provides that the court, upon approving the report, shall render final judgment thereon, and "that so much of the report as is a judgment for benefits against specific property be a lien on such property for ten years from entry of the judgment, *and prior to all other liens thereon.*" (Italics ours.)

Article XXIII deals with the subject of special tax bills, and provides that special tax bills shall be prepared and issued for all special assessments for public work or improvements undertaken under the charter. Section 5 then provides that "all special tax bills shall be a *first lien* on the property charged therewith from the day of issuance thereof; provided, there shall be no priority between special tax bills issued under this Charter, regardless of the date of such bills." (Italics ours.)

Thus it is to be seen that if each of such provisions of the charter is considered separate and apart from the other and is given a purely literal construction without regard to any question of the intent expressed in the charter as a whole, the two are indeed in conflict as contemplating a result which, in the very nature of things, would be impossible of attainment. In other words, if the lien of a benefit judgment is to be "prior to all other liens" on the property as Article XXI, Section 8, provides that it shall be, then it would obviously take priorty over the lien of a special tax bill, while, on the other hand, if the lien of a special tax bill is to be a "first lien" against the property as Article XXIII, Section 5, provides that it shall be, then of necessity it would be superior to the lien of the benefit judgment.

But though these two provisions of the charter are literally in conflict with one another in the respect that has been pointed out, we must approach the case with the idea that no such result was intended by those who drew the charter, and, if it is possible to do so, we must harmonize and reconcile the two provisions so as to give effect to both in the light of the intent which has been expressed in the charter as a whole. Both provisions are therefore to be read and construed together as component parts of but a single instrument and with a definite purpose attributed to each, and neither is to be destroyed or taken as meaningless unless the situation is such that there is no escape to be had from that conclusion.

Our task of reconciling the apparently inharmonious provisions of the charter will be simplified if we keep in mind that this case presents but a single issue, which is the question of priority or parity as between the liens of special tax bills on the one hand and of benefit judgments on the other. There is happily no question involved of priority as between the liens of special assessments and of general city taxes, and we shall therefore undertake to determine the meaning and effect of the charter only in so far as it relates to and controls the specific question now before us for decision.

In seeking to arrive at the motives that undoubtedly prompted the authors of the charter to write into 'it the two provisions purporting to accord priority to the liens both of benefit judgments and of special tax bills, it is of importance that we first consider certain underlying principles which have to do with the subjects of the fundamental character of special assessments for local improvements and of the priority which obtains between tax liens in the absence of statutory or charter provision serving to alter the usual order.

To begin with, the authority of a municipality to levy special assessments is strictly referable to and sustainable under the State's taxing power, which, in the case of the taxing of particular property for the cost of public improvements, is delegated to municipalities to be exercised by them as agencies of the State. The theory is that while each and every improvement is necessarily made for the public welfare, yet as an incident to the improvement the adjoining property derives a special benefit over and above that which accrues to property generally, so that in consequence of the benefit to it there is assessed against such adjoining property a tax or assessment which is supposed to represent the amount in which it has been enhanced in value by reason of the improvement. [Jaicks v. Oppenheimer, 264 Mo. 693, 175 S. W. 972; Morey Engineering & Construction Co. v. St. Louis Artificial Ice Rink Co., 242 Mo. 241, 146 S. W. 1142.] And not only is the taxing power the source of the authority for the issuance of special tax bills which are prepared after the officials of the city, proceeding under the authority of the charter and appropriate ordinances enacted pursuant thereto, have determined what the special benefits may be, but the same is as well the authority for an assessment of benefits which is made in the course of a judicial proceeding, lawfully authorized for such a purpose, and finally culminating in the entry of a judgment for the amount of the benefits assessed. [City of St. Louis v. Senter Commission Co., 335 Mo. 1209, 84 S. W. (2d) 133.]

So it follows that in providing that benefit judgments and special tax bills should be liens on the property to be charged therewith, the framers of the charter were creating tax liens which, in the absence of any provision to the contrary, would take priority in the order of tax liens generally, that is, according to the rule of reverse priority, which

means that the last lien in point of time has priority over those which precede it in point of time. [Jaicks v. Oppenheimer, *supra*; Little River Drainage District v. Sheppard, 320 Mo. 341, 7 S. W. (2d) 1013; Dickey v. Andover Investment Co. (Mo. App.), 45 S. W. (2d) 1086; Redemeier v. Perkinson (Mo. App.), 186 S. W. 1107.]

In other words, unless provision is made for a different result to follow, the priority of tax liens is precisely in the reverse order of that which obtains in the case of ordinary conventional liens or liens established by private contract, whose priority follows chronologically according to the dates of their creation or recordation, with the lien first accruing having priority over those which succeed it in point of time. The reason for the application of the rule of reverse priority in the case of the liens of general taxes for the support of the government does not concern us in this proceeding, but in the case of liens for special benefit assessments the theory is that inasmuch as such a lien represents the permanent increment to the value of the land by reason of the making of the public improvement, it would ordinarily be inequitable to permit prior encumbrancers, in the enforcement of their liens, to be secured by the added value which has been put in the property by virtue of the subsequent improvement without at the same time subjecting them to the costs and outlays thus subsequently incurred. [Jaicks v. Oppenheimer, *supra*; Dickey v. Andover Investment Co., *supra*.]

There can be no doubt that when the authors of the charter set about to prepare the same they were familiar with the rule of reverse priority which ordinarily obtains in the case of liens for taxes, but for some reason were of the opinion that a different situation should be provided for under the new charter in the case of the liens of all special benefit assessments upon the same piece of property. They may well have felt that if all such liens were not only given priority but also put on a parity, the result would be to stablize the security which investors in tax bills and benefit judgments would receive, and thereby to add to the attractiveness and marketability of such forms of investments. At any rate, they did distinctly provide that the lien of a benefit judgment should be "prior to all other liens" on the property, and that each and every special tax bill should be a "first lien" on the property, and therein we have the basis of this suit, which is to determine what they actually intended to provide by these apparently inharmonious provisions of the charter.

Now there is one thing certain, and that is that while the liens of benefit judgments and of special tax bills are created by wholly different forms of procedure, the authority for their creation emanates from a common source, and in every instance, though the improvements are made for the public benefit so as to warrant the exercise of the taxing power, they result incidentally in special benefits to the adjoining property. So both forms of liens arise alike in connection

with the making of public improvements, and with this singularity of purpose in their origin, the framers of the charter would appear to have been impressed with the notion that there was no sound reason for discriminating between them to the extent that either should be given superiority over the other.

So far as special tax bills are concerned, the authors of the charter went so far as to write into it (Article XXIII, Section 5) that "there shall be no priority between special tax bills issued under this Charter, regardless of the date of such bills." Conceding that this particular provision is literally restricted to the matter of parity between special tax bills, its importance is that it demonstrates the intent of those who drew the charter to abrogate the rule of reversed priority, and thereby serves to clarify their purpose in providing in Article XXXI, Section 8, that the liens of benefit judgments should be "prior to all other liens" on the property.

We do not undertake to say, as does the city in its brief, that the provision of Article XXIII, Section 5, which specifically establishes parity as between special tax bills, should itself be construed to provide parity as between all special tax liens, including the liens of benefit judgments. The terms "special tax bill" and "benefit judgment" do not denote the same thing, even though it is true, as we have already pointed out, that both result from the exercise of the sovereign taxing power and represent a special benefit to private property. Both terms are in common use, and each has such a definite meaning of its own that it could scarcely be presumed that the one was intentionally used as inclusive of the other.

But regardless of all this, we do nevertheless think that a fair construction of both Article XXI, Section 8, and Article XXIII, Section 5, discloses an intent that the liens of benefit judgments and of special tax bills shall be on a parity with each other. It is certainly clear that it was intended that both liens should have a superior status, the one being expressly declared to be "prior to all other liens," and the other a "first lien." In view of such positive language with reference to the status of each type of lien, how can it be said that the charter provides that either lien shall have priority over the other? The logical conclusion is that both liens were intended to have a superior status, but which could only be the case if each was put on a parity with the other. By this interpretation alone can the two provisions be reasonably harmonized so that a legitimate effect and meaning may be attributed to each; and when due regard is had for the common source of the authority for the creation of both liens, for their identity as representing the added value accruing to the property by reason of the public improvement, and for the ends apparently sought to be attained by the authors of the character in according a superior status to both, the reason for putting them on a parity is all the more evident. In other words, we must read the

two provisions together in order to get at their true intent and meaning, and when we do so the ultimate result is that the liens both of benefit judgments and of special tax bills are no less put on a parity with each other by the charter as it is now written than would be the case if there were but a single provision of the charter embracing both types of liens and declaring that each of such liens was made a "first lien," "prior to all other liens" on the property.

As opposed to this result there is a suggestion made that because of the literal conflict which exists between the two provisions of the charter, the last in order of arrangement should prevail, which would mean that the lien of special tax bills under Article XXIII, Section 5, should have priority over the liens of benefit judgments under Article XXI, Section 8. We appreciate the rule of statutory construction that in the case of irreconcilable conflict between two different parts of the same act, the last in order of position will control "unless there is some special reason for holding to the contrary." [State ex rel. v. Gideon, 273 Mo. 79, 199 S. W. 948.] However, as is aptly said in 59 C. J. 1000, this rule is purely artificial and arbitrary, and is to be resorted to only where there is clearly an irreconcilable conflict, and all other means of interpretation have been exhausted. In this case, despite their literal ambiguity, there is actually no irreconcilable conflict between the two provisions of the charter, but instead, as we have already pointed out, it is not only possible, but in fact entirely reasonable, to harmonize and reconcile them so as to give that effect to both of them which the framers of the charter would obviously seem to have intended.

It follows that the judgment rendered by the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter*, P. J., and *Becker* and *McCullen*, JJ., concur.