## SPECIAL ASSESSMENT SECURITIES CORPORATION v. BROWN et al.
### No. 3515.

Court of Civil Appeals of Texas. El Paso.
May 6, 1937.

Rehearing Denied June 10, 1937.

Sylvan Lang, Morris Wise, and Leslie Byrd, all of San Antonio, for appellant.

B. W. Teagarden, Perry S. Robertson, David M. Stiles, and Hill & Uhl, all of San Antonio, for appellees.

NEALON, Chief Justice.

Herbert C. Heller & Co., Inc., brought suit against A. A. Brown, William R. Levy, Ernest M. Levy, S. J. Chandler, R. L. White, doing business as R. L. White Company, and Emelie Gutzeit, seeking personal judgment against the first four named of said defendants and foreclosure of an alleged special assessment lien upon certain real estate in San Antonio against the claims of all defendants.

The property described was conveyed to defendant Chandler by defendant Gutzeit June 9, 1927. In the conveyance a vendor's lien was retained to secure the payment of a note for $3,000, evidencing a balance due for purchase money. Subject to this lien title was in defendant Chandler February 17, 1930, when the governing body of the city of San Antonio declared the public necessity for opening Elm street in said city between its intersection with the north line of East Commerce street and the east line of South Houston street. This ordinance directed the city engineer to prepare plans, profiles, plats and specifications covering the proposed improvement, and to report the same to the city commissioners, together with a statement of the cost of such improvements, the names of the property owners abutting thereon, the description of the property to abut upon said street as opened, and the amount to be assessed against the owners. April 14, 1930, the city commissioners passed an ordinance, which was approved the same day, approving the city engineer's report, ordering the improvement to be made and the costs thereof assessed against the abutting owners and their property, and ordering that a hearing be given all of said owners, and all persons interested in said property or having liens thereon, on May 5, 1930, at 10 o'clock a. m., in the city council chamber, and directing the city clerk to give notice of said hearing

to said property owners (including defendant Chandler). The ordinance further directed that notice be advertised in the San Antonio Evening News, a daily newspaper of general circulation in said city, by publishing a copy of the ordinance three times therein, the first publication to be more than ten days before the hearing, copies of which to be forwarded by registered mail to the owners. This was done. It was agreed that defendant Chandler received notice of said hearing.

The hearing was opened May 5, 1930, and continued until May 12, 1930, at which time it was continued to May 26, 1930, when it closed. The commission then determined, after hearing objections and evidence, that none of the special assessments proposed to be made would exceed a "reasonable increase to accrue to the value of the corresponding property." $5,336.50 was the amount assessed against defendant Chandler and the property herein involved.

F. W. Gutzeit, son of defendant Emelie Gutzeit, and "her agent in her affairs" saw a news item with reference to the opening of the street. He did not pay any attention to any legal notices.

June 9, 1930, the city commission passed an ordinance (approved the same day) assessing the cost of the improvement against abutting owners, including defendant Chandler, and authorizing the issuance of assignable certificates evidencing the respective unpaid amounts due from property owners. In pursuance of said authority, a special assessment certificate for $5,336.50 was issued against defendant Chandler fixing a personal liability against him and a lien against said property in said amount. Said certificate was assigned to Herbert C. Heller & Co. and filed for record in the office of the county clerk of Bexar county August 11, 1932. The name of Herbert C. Heller & Co., Incorporated, was changed to Special Assessment Securities Corporation November 7, 1932, and thereafter the suit was prosecuted under that name.

Long prior to the proceedings enumerated herein, the city of San Antonio adopted chapter 11, title 22, of the Revised Civil Statutes of 1911, known as "The Street Improvement Law."

Said special assessment certificate, which was in evidence, contained the following recitals:

"That said improvements have been duly authorized and undertaken in accordance with the provisions of an ordinance passed and approved on the 17th day of February, A. D. 1930, ordering the widening and straightening (or opening or extending) of said street; and said assessment was levied and this certificate is now issued in pursuance of the law and ordinances of said City before the actual completion of said improvement to provide for the payment by said owner or owners, of the pro rata part of the cost of said improvements so chargeable against said abutting property and said owner or owners, in order to finance such improvement and complete the contracts of purchase of the land required therefor.

"That all proceedings with reference to making such improvements have been regularly had in compliance with law and that all prerequisites to the fixing of the assessment lien against the property described in this certificate, and the personal liability declared hereby, have been regularly had and performed."

May 28, 1931, defendant Chandler conveyed said land to A. A. Brown, Wm. R. Levy, and Ernest M. Levy, in the following proportions: To A. A. Brown an undivided one-half interest and to each of the other grantees an undivided one-fourth interest, part of the consideration being the assumption by all of said grantees of the $3,000 note payable to Emelie Gutzeit, one note for $10,000 payable to F. G. Oppenheimer by Sam J. Chapman, and the extension assessment declared on by appellant. It was stipulated that the assumption of the Oppenheimer note should not be construed to create a lien against the property here involved.

Defendant R. L. White, as assignee of Alamo Paving Company, is the owner of a special assessment certificate evidencing a personal indebtedness for paving as against A. A. Brown and Wm. R. and Ernest M. Levy and a lien against said property. The ordinance creating the paving lien was passed and approved April 11, 1932, subsequent to the conveyance by Chandler. While this suit was pending, defendant R. L. White secured judgment against defendants Brown and Messrs. Levy in a suit in another court, in which appellant and Emelie Gutzeit were not parties, It was stipulated that this judgment should not affect appellant's right of foreclosure as against defendant if it should be adjudicated that appellant's was the superior lien and prior in time to that of White.

The extension assessment certificate stipulated that a reasonable attorney's fee should be paid. It was further stipulated that a reasonable fee would be $1,000.

The case was tried before the court without the aid of a jury.

The court rendered a personal judgment in favor of appellant against defendants S. J. Chandler, A. A. Brown, William R. Levy, and Ernest M. Levy, but denied foreclosure of appellant's alleged lien. Personal judgment was rendered in favor of R. L. White against defendants Brown and William R. and Ernest M. Levy, and for foreclosure of his lien, giving it priority over the vendor's lien of Emelie Gutzeit; and in favor of Emelie Gutzeit against defendants Chandler, Brown, and William R. and Ernest M. Levy for her debt and for foreclosure of her lien, subject only to the lien of R. L. White.

Three other defendants, who were the owners of judgments, disclaimed.

Neither findings of fact nor conclusions of law appear in the record. These were not requested.

Appellant alone excepted to the judgment and now prosecutes this appeal.

## Opinion.

■ By her pleadings and in her brief appellee Emelie Gutzeit challenges the right of appellant to recover on account of alleged noncompliance with section 98 of the Charter of the City of San Antonio, and articles 1175, 1202, 1206, and 1207, of the Revised Statutes. Section 98 of the charter treats of the procedure to be followed as between the city and property owner in cases where it is necessary to appropriate private property for public use, and is pertinent to this controversy only to the extent that it provides that the city shall have the right to assess benefits to the owners of abutting property. So far as this record reveals, no property was condemned. Section 97 of the charter confers upon the city council the power to acquire private property on behalf of the city for corporate purposes by purchase, gift, devise, or condemnation. Appellees, for the purposes of this suit, are not concerned with the method used in the acquisition of the right of way. City of Dallas v. Firestone Tire & Rubber Co. (Tex.Civ.App.) 66 S.W.(2d) 729. They are concerned solely with the question of the assessment of the costs against the owner of abutting property and the property, and with protection from assessments exceeding the enhancement in value to result from the improvement.

As to article 1175 (par. 17), it may be said that it deals, likewise, with the issue between the owner of the property to be condemned and the city, and the apportionment of costs, except that it further provides specifically, "The city may adopt any other method for the opening, straightening, widening or extending of its streets as herein provided for as may be deemed advisable, and charge the cost of same against the property and the owner specially benefited in enhanced value and lying in the territory of said improvement, that its charter may provide."

■ Article 1206 provides alternative procedure for the condemnation of private property sought to be taken by cities in order to lay out or extend any highway within the city limits. No "taking" of private property is involved herein. City of Corsicana v. Mills (Tex.Civ.App.) 235 S.W. 220. Article 1206 is part of chapter 17, of title 28. The applicable portions of said chapter are article 1202, which grants cities the power to "lay out, open * * * straighten, or extend any highway within its limits" and to assess "part or all of such costs against the owners of property abutting," etc.; article 1203, which confers the power to purchase the property to be used; article 1209, which provides for assessing the costs against abutting property; article 1215, which provides that the city may issue assignable certificates payable to the city or the purchaser thereof, "declaring the liability of owners and their property," etc., and article 1216, which treats of the method of declaring on such certificates.

■ The assessment certificate was introduced in evidence; and, thereby, prima facie, the validity of the assessment was established. Such proceedings as have been introduced in evidence were in compliance with the charter and the general laws.

■ The owner appeared before the city commission to oppose the action of that body. Mrs. Gutzeit, the holder of the vendor's lien did not. Neither brought suit, as permitted by R. S. art. 1219, to correct or set aside the assessment. They were, therefore, at the time this suit was instituted, barred by said article from interposing any defense challenging the validity of said proceedings. Copellar v. O. L. Crigler Co. (Tex.Civ.App.) 87 S.W.(2d) 326, 327; Sims v. City of Mt. Pleasant (Tex.Civ.App.) 12 S.W.(2d) 833.

The proceedings had in the case had the effect of establishing a personal charge against the defendant Chandler, and a valid lien against the property superior to the vendor's lien of Mrs. Gutzeit. Article 1090, Rev.Civ.Statutes; Evans v. Whicker, 126 Tex. 621, 90 S.W.(2d) 554.

What has been said is a sufficient answer to appellee White's objection to the procedure followed. No question has been raised as to the validity of White's lien. White's lien and that of appellant are of equal dignity. Uvalde Construction Co. v. City of Dallas (Tex.Civ.App.) 99 S.W.(2d) 644; Powell v. City of Amarillo (Tex.Com. App.) 93 S.W.(2d) 144.

Judgment is reversed and rendered in favor of appellant for the amount of its debt, with interest and attorney's fees of $1,000, and for foreclosure of its lien, giving the same priority over all other liens, except that of R. L. White, and providing that these two liens shall be of equal dignity.

Except as above stated, the judgment rendered in the district court will not be disturbed.