# MAY, 1936

## C. M. POWELL V. CITY OF AMARILLO ET AL.

No. 6484. Decided April 8, 1936.
Rehearing overruled May 13, 1936.
(93 S. W., 2d Series, 144.)

*H. B. Sanders,* of Dallas, for plaintiff in error.

Where paving liens are assessed against the same piece of property by a municipal corporation, under different proceedings and at different dates, the last dated lien shall be first in dignity and the first in date shall be inferior. Jaicks v. Oppenheimer, 264 Mo., 693, 175 S. W., 972; Gould v. St. Paul, 120 Minn., 172, 139 N. W., 293; 2 Elliott on Roads and Streets (4th Ed.) 937; 44 C. J., 807.

*Earl Wyatt,* of Amarillo, for defendant in error.

As between two assessment liens created against the same property by a municipal corporation, the assessment levied first in time takes precedence and is the first enforcible lien against

the property under the statute where there is no express provision therein regulating the ranking of the liens. Brady v. Burke, 90 Calif., 1, 27 Pac., 52; City of St. Charles v. Ramsay, 199 La., 722, 202 N. W., 499.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Suit was filed in the name of the City of Amarillo, Texas, for the use and benefit of United Fidelity Life Insurance Company against J. P. Burgess, Alta Burgess, J. M. Petty, Amarillo Construction Company and White & Kirk, Inc. The suit was upon a paving certificate owned by the company issued to Jordan Construction Company, and its purpose was to foreclose a paving lien against a lot in the city of Amarillo, alleged to be a first and superior lien securing its payment. C. M. Powell intervened, suing upon a paving certificate isued to Amarillo Construction Company, seeking to foreclose a paving lien against the same lot, which was also alleged to be a first and superior lien. Trial was before the court without a jury. Personal judgment against the owners of the lot was rendered for both plaintiff and intervenor; but it decreed that plaintiff's lien, the lien fixed first in order of time, was superior to the lien of intervenor. The Court of Civil Appeals affirmed the judgment. 57 S. W. (2d) 233. Writ of error was granted on the importance of the question presented.

The liens in question are special assessment liens. They are for the benefit of different paving contractors, and arose out of the paving of two streets abutting on the same lot. The assessments for the respective improvements were made by the city against the lot on different dates, and under different proceedings. The date of the ordinance of assessment fixing plaintiff's lien is August 30, 1927. The ordinance fixing intervener's lien was dated September 27, 1927. Plaintiff contends its lien has superiority because first in point of time; that if not superior, it is on a parity with intervenor's. Intervenor claims superiority for his lien because last in point of time; and that if not superior, it is on a parity with plaintiff's.

The sole question presented is to determine the status of the two liens in question with respect to whether one is superior to the other, or whether both fall in a class where each is on a parity with the other. This question has not heretofore been decided by the Supreme Court.

The cases passing on the question of priority as between liens for public improvements are fairly evenly divided, so far as number is concerned, between those holding that the later in

time is paramount, just as in the case of general tax liens, and holding the reverse, as in the case of special assessment liens. See annotation under Woodill & Hulse Electric Co. v. George Young, and cases there discussed, 5 A. L. R., 1301.

There is a rule applicable in the case of general taxes, that the lien of the latest tax prevails over earlier liens of similar taxes levied by the same authority. This rule of inverse priority relates primarily to the question of priority as between general tax liens of the same class, but is held in some jurisdictions to be applicable in the case of special assessment liens. In the cases so holding with respect to special assessments it is recognized that the reason which gave rise to the rule is that there is an imperative necessity for collecting revenues for the support of the government, and that a failure to collect current revenues might destroy the very government itself. Such is not the case, however, with respect to special assessments. The theory underlying their creation is that a corresponding benefit attaches to the property assessed by virtue of the improvement provided for. The reason for rejecting the rule of inverse priority as applied to special assessment liens is stated in Hollenbeck v. Seattle, 240 Pac., 916, in the following language:

"Manifestly there is no necessity for applying the inverse-order rule, because governmental funds have not been expended and the moneys to be collected go not to the government but to the private investor."

This general phase of the question need not be further discussed as the reason stated in the foregoing excerpt for not holding the assessment lien latest in point of time to be superior, is sufficient. Those phases of the question involving the contentions that the lien first in point of time is superior, or that both are on a parity, require further consideration.

The question must be determined in each case from the legislative intent underlying the statutory and charter provisions authorizing the liens involved; and the difficulty, if not the impossibility, of reconciling the apparently conflicting decisions arises largely from the fact that the provisions of the various statutes and ordinances creating the liens are not the same. It would not be profitable for this reason to review the reasons employed in the cases, other than those involving statutory construction. Those reasons, that in those aside from the questions of statutory construction, are grounded in expediency and concern the legislature rather than the courts. It becomes necessary therefore to examine the charter and ordinance provisions authorizing and fixing the liens involved.

Article 1105b, R. S., 1925, provides that cities incorporated either under special or general law, including those operating under a special charter or amendment thereof, adopted pursuant to the home rule provisions of the Constitution, "shall have power to cause to be improved any highway, within their limits by * * * paving, repaving, and repairing in a permanent manner, and by constructing, reconstructing, repairing and re-aligning curbs, gutters, and sidewalks * * * , which power shall include that of causing to be made any one or more of the kinds or classes of improvements herein named or in combination thereof, or parts thereof."

Section 6 of the article referred to in so far as material here, reads:

"Subject to the terms hereof, the governing body of any city shall have power by ordinance to assess all the costs of constructing, reconstructing, repairing and realigning curbs, gutters, and sidewalks, and not exceeding nine-tenths of the estimated cost of such improvement, exclusive of curbs, gutters, and sidewalks against property abutting upon highway or portion thereof ordered to be improved, and against the owners of such property * * *. Any assessment against abutting property shall be a first and prior lien thereon from the date the improvements are ordered * * *. The governing body shall have power to cause to be issued in the name of the city assignable certificates in evidence of assessments levied declaring the lien upon the property and reliability of the true owner or owners thereof * * *, and to fix the terms and conditions of such certificates.

"* * * Such *assessments* * * * shall be *a* first and prior *lien* on the property assessed, superior to all other liens and claims except state, county and city ad valorem taxes, and shall be a personal liability and charge against the owners of the property assessed." (Italics ours).

The city of Amarillo operates under a special charter as amended December 21, 1925, Section 15 of which reads:

"The City of Amarillo shall have exclusive dominion, control and jurisdiction in, upon, over and under the public streets, avenues, alleys, and highways of the city and to provide for the improvements thereof by paving, raising, grading, draining or otherwise, and to charge the cost of making *such improvements* against the abutting property, by fixing *a lien* against the same and personal charged against the owner thereof, *according to an assessment especially levied therefor,* in an amount not to exceed the special benefit any such property

received in enhanced value by reason of such improvements, and to provide for the issuance of assignable certificates covering the payment of said improvements; * * * ." (Italics ours).

The certificates sued upon by plaintiff and intervenor respectively recite that by the ordinance levying the special assessment therein certified to such assessment "is declared to be a first and paramount lien upon said premises (except as to lawful ad valorem taxes) * * *."

No contention is made by either party that the date or dates upon which the city ordered the paving construction, or improvements, or the date or dates upon which the assessments were levied, would show a different priority in point of time from what is reflected by the certificates themselves; and what is herein stated will proceed upon that assumption.

We think it is not material in the case before us whether the question be determined by the statutory or by the charter provisions above set out. The legislative intent underlying each appears to be the same with respect to the status of the special assessments as to whether one is superior to, or on a parity with, the other.

It will be noted that the statutory provision stipulates that "such assessments shall * * * be a first and prior lien on the property assessed" and that the charter likewise provides "the cost of making such improvements" shall be "a lien" against the same "according to an assessment especially levied therefor." It is pointed out in this connection also that the assessing ordinances passed pursuant thereto declare such lien to be "a first and paramount lien." (Italics ours).

The language of both the statute and charter authorizing the levy of the special assessment liens indicate they are dealt with as a class, and that this class of liens is given priority as such over all other liens except general tax liens referred to as "lawful ad valorem taxes." The language according priority in each instance to the special assessments authorized being the same, is fairly susceptible of the construction that it is the class of assessments rather than any particular assessment that is given priority. In our opinion it was the legislative intent to place the successive liens to be fixed against the property improved by special assessment, upon a parity. This construction obviates holding that the city council by using in its assessing ordinances substantially the language of the statute, fixed a first lien (except for general taxes) against the lot to secure the cost of paving one of the two streets upon which it abuts, and 28 days later fixed against it a lien of a different status as

to priority to secure the cost of paving the other. Such intention should not be imputed unless it clearly appears from the language used, especially in view of the fact that each certificate recites that the cost of each paving improvement thus secured is not in excess of "the special benefit * * * such property received in enhanced value by reason of such improvement." Brownwell Improvement Co. v. Nixon, 48 Ind. App., 195, 92 N. E., 693, 95 N. E., 585.

It is held in Woodill & Hulse Electric Co. v. Young, 180 Calif., 667, 182 Pac., 422, 5 A. L. R., 1296, which involves special assessment liens, that the statutory provision that "the assessment shall be a first lien, * * * until * * * fully paid," is not such to give the earlier lien priority over a like succeding assessment lien, as the language is just as applicable to the later lien as to the earlier. While the holding in that case accords superiority to the lien latest in point of time, it is predicated on the reason which gave rise to the rule in the case of general taxes above referred to, and not upon the language of the enabling statute.

The article of the statute in the Hollenbeck case supra, dealing with special assessments, provides that "said lien shall be paramount and superior to any other lien or encumbrance whatsoever, theretofore, or thereafter created, except a lien for * * * general taxes." It will be noted that the foregoing provision is similar to that under consideration in this case, in that it provides the lien created shall be a paramount lien except for general taxes. In construing the quoted provision the court in the Hollenbeck case says:

"On the first reading one might think this section could be construed in favor of the priority rule. The language creating a lien upon the property assessed from the time the assessment roll is placed in the hands of the officer authorized to collect favors such a construction, but the sentence immediately following, to the effect that the lien shall be paramount and superior to any other lien or incumbrance whatsoever, theretofore or thereafter created, except a lien for general taxes, negatives the priority rule, since, manifestly, though the first assessment became a lien from the date of the assessment roll, paramount and superior to all others, yet, likewise, each and all of the assessments subsequent in date, according to the language of the statute, became likewise such paramount and superior liens; and to give effect to the whole section it would seem that, as between special assessment liens, each is offset by the other, all are paramount and superior to all other liens except general

taxes, but none is or can be paramount and superior to any other such special assessment."

The language of the statute in the present case, as well as that of the city charter and ordinances passed pursuant thereto, is fairly susceptible of the construction that the successive special improvement liens authorized and assessed thereby are of equal dignity, and indicates a legislative intent on the part of both the legislature and city council that they be placed upon a parity. We therefore hold the liens sued upon are upon the same status as to priority, and of equal dignity.

The trial court and Court of Civil Appeals erred in decreeing plaintiff's lien superior to intervenor's and in awarding foreclosure on that basis and directing a distribution of the proceeds accordingly. That part of the judgment so foreclosing the liens and directing such distribution of the proceeds is set aside, and judgment is here rendered in lieu thereof so as to provide for foreclosure and sale, and distribution of the proceeds thereof on the basis of equality of liens. In all other respects the judgment is affirmed.

The judgment as reformed is affirmed.

Opinion adopted by the Supreme Court April 8, 1936.

Rehearing overruled May 13, 1936.