**115 P.2d 66**

## CITY OF ALBUQUERQUE v. MIDDLE RIO GRANDE CONSERVANCY DIST.

### No. 4573.

Supreme Court of New Mexico.
May 16, 1941.

Rehearing Denied July 18, 1941.

George R. Craig and Stanley W. P. Miller, both of Albuquerque, for appellant.

Dailey & Rogers and Scott H. Mabry, all of Albuquerque, for appellee.

James H. Pershing, Robert G. Bosworth, and Louis O. Kelso, all of Denver, Colo.; amici curiæ.

BICKLEY, Justice.

This is an appeal from the judgment of the District Court of Bernalillo County, holding that, where two assessments were levied against the same property at different times, one under Chap. 133, Session Laws 1923, and one under Chap. 140, Laws 1923, as amended by Chap. 45, Laws 1927, the assessment first levied is superior, or that priority in time controls. District Judge Johnson, in deciding the case, delivered a very able opinion as follows:

"The City of Albuquerque filed this suit to foreclose certain paving liens created

pursuant to Chapter 133 of the 1923 Session Laws. The Middle Rio Grande Conservancy District is named as a defendant, and by its answer the Middle Rio Grande Conservancy District sets up Conservancy liens against the same properties, created by virtue of Chapter 140 of the 1923 Session Laws.

"The relief sought by the plaintiff, City of Albuquerque, is the foreclosure of its paving lien (which is prior in time), and an adjudication by the Court that the paving lien is a first and paramount lien upon the real estate involved. In its answer the defendant, Middle Rio Grande Conservancy District, prays for relief as follows, to-wit: That out of the proceeds derived from the sale of the property under the paving lien foreclosure, that the proceeds of such sale be applied first to the delinquencies then existing under the Conservancy lien, and that at any such sale the property be sold subject to the alleged perpetual lien of the Conservancy District.

"From the briefs submitted by counsel it appears that one line of authorities would give the paving lien priority, another line of authorities would give the Conservancy lien priority, and that there is also authority for the proposition that the two liens may be considered equal, and that neither may have precedence over the other.

"Counsel for the City contend that a proper construction of Chapters 133 and 140 of the 1923 Session Laws requires a holding to the effect that the paving lien takes priority over the Conservancy lien. In support of this argument counsel for the City refer to the language of Chapter 133, wherein it is provided that the paving lien shall be superior to all other liens except the lien for general taxes, and to Chapter 140, wherein it is provided that the Conservancy lien is a perpetual lien 'to which only the lien for general or special State, County, City, Town, Village or School taxes shall be paramount.' The contention of counsel for the City would probably be open to little serious dispute except for other language contained in said Section 515 of Chapter 140. Section 515 also contains this language: 'No sale of such property to enforce any general or special State, County, City, Town, Village or School tax or other lien shall extinguish the perpetual lien of such assessments.'

"We have, in Section 515, what appears to be a most peculiar situation, to-wit: A Conservancy lien to which certain other tax liens are paramount, but nevertheless, a Conservancy lien which cannot be extinguished. If the language of Section 515 makes a paving lien paramount to a Conservancy lien, how can the paving lien be paramount if, through foreclosure sale the Conservancy lien cannot be extinguished? A foreclosure sale under a paramount lien must necessarily extinguish all other liens, —otherwise the so-called paramount lien is not actually a paramount lien.

"The contradictory language in said Section 515 makes it extremely difficult to accept as correct the theory of counsel for the City that Section 515, by the express

language thereof, gives the paving lien priority over the Conservancy lien.

"The Court is of the opinion that the repeated use of the words 'perpetual lien' in said Section 515(c) indicates an intention on the part of the legislature to preserve the Conservancy lien. Furthermore, the latter part of Section 515(c) expressly provides that the Conservancy lien shall not be extinguished by sale for other tax liens, and under the rules of construction this latter language will have to prevail over earlier language in the Section which may be of a conflicting nature. The conclusion of the court therefore, is that there is nothing in the statutes under consideration which will enable the Court to say that the legislature has expressly or impliedly made the Conservancy lien subject to the paving lien.

"At first glance it would seem that the proper rule to apply would be that as a matter of fairness and justice, the paving lien and the Conservancy lien should be treated as equal, which would necessarily mean that a foreclosure of either lien would not extinguish the other; but this seems to lead to practical difficulties. Suppose the taxpayer permits the paving lien to become delinquent, but keeps up payments on the Conservancy lien; and, let us suppose that the paving lien is $500.00, the Conservancy lien is $500.00, and the fair market value of the property, free and clear of both liens, is $600.00. If the City sells the property for the delinquent paving, and sells the property subject to the Conservancy lien, then the City will realize on the sale $100.00, (from which must be deducted the expenses of suit and sale) and the Conservancy District is placed in the fortunate position of having good security, and of eventually getting full payment.

"In a reverse situation, where the taxpayer would keep up the paving and let the Conservancy assessments become delinquent, a foreclosure on the part of the Conservancy District would net the Conservancy District practically nothing, but would insure the City eventually collecting its paving lien in full. Accordingly, if the two liens are equal in theory, they may become decidedly unequal as a matter of fact. If both liens are equal, a peculiar situation will arise where both the paving lien and the Conservancy lien are in default. Neither the City nor the Conservancy District would dare initiate proceedings and make the other a defendant because the defendant could remain passive in the foreclosure proceedings, merely insisting that its lien be preserved and the moving party, or plaintiff, would come out on the short end. Accordingly, both the City and the Conservancy District would refrain from filing foreclosure proceedings unless forced to do so by other circumstances, such as a possibility of the running of some statute of limitations.

"In the case of Citizens' Trust & Savings Bank v. Fletcher American Company ([207] Ind. [328, 190 N.E. 868, 192 N.E. 451, 452], 99 A.L.R. 1474), the Court adopted the rule that the liens should be

treated equal, and as to procedural difficulties states, at the close of the opinion:

" 'The foreclosure procedure is statutory, and if it presents difficulties or is inadequate, the remedy must come through legislation.'

"If the many procedural difficulties are attempted to be met by statutory enactment or by arbitrary action of the Court, it may be that constitutional questions would then be involved as to how far the legislature or the Courts could go in changing so-called remedies in order to meet the difficulties of the situation. And this Court is not at all inclined to adopt a rule that would probably lead to a serious question as to whether alleged changes in remedial rights would not, in fact, amount to changes in substantive rights. And if adequate remedies could be worked out, either through legislation or arbitrary court action, still further difficulties may arise in cases where the two liens did not cover exactly the same property,—and the Court cannot assume that in all instances a paving lien and the Conservancy lien will cover the identical tract of land.

"The Court will discard the theory that the liens should be treated as equal, for the reasons stated. It therefore seems to the Court that either the paving lien or the Conservancy lien should be given priority.

"The statutes involved do not answer the question. The authorities are apparently divided; one line of authorities gives priority to the lien first filed, while the other line of authorities gives priority to the lien last filed. Which rule should be followed?

"It seems to the Court that it would better serve the ends of justice to give priority to the first lien filed. As to mortgages and other liens of like character, the first lien of record becomes the paramount lien upon the property. Anyone dealing with the property finds the lien of record, and can then take a second mortgage on the property or leave it alone, as he may see fit.

"Upon what logical basis should assessment liens be treated differently than ordinary contractual liens?

"It is argued that the last lien filed should be prior, because the last lien improves the property, and therefore should be paid off first. This is purely a theoretical proposition, because everyone knows that many assessments for improvements do not improve the property to the extent of the assessments. Why should a Court fix lien priorities upon a line of reasoning that resorts to fiction rather than to fact?

"The questions involved in determining lien priorities are usually seriously raised only when the property is of insufficient value to satisfy all the liens; and, accordingly, if the last lien filed is to be given priority, the holder of the first lien sees his investment and security destroyed by the foreclosure of a subsequent lien, which the Court has, with a serious face, just informed him was of material benefit to his security. Furthermore, the rule that the 'last shall be first' must necessarily render

every lien for public improvements insecure in that the value of that lien is dependent upon the wisdom and judgment of those who impress upon the property subsequent liens for public improvement.

"It seems to the Court that the rule that 'the last shall be first' is not nearly as fair nor as logical as the rule that 'the first shall be first'. The first lien is there for everyone to see, and those purchasing bonds secured by a lien second in time, at least had the opportunity of buying their bonds with their eyes open.

"Accordingly, the Court will hold that the paving lien, which was prior in point of time, should be given priority over the Conservancy lien.

"The Court derives some comfort in the conclusion that it has reached from the annotation in 99 A.L.R. page 1478, wherein it is stated, at page 1480:

" 'The decisions of jurisdictions which had not passed on the point under annotation at the time of the original annotation (5 A.L.R. 1301) are practically unanimous in giving priority to the senior lien.' "

So ends the opinion of Judge Johnson with which, in the main, we agree. We discover, however, further grounds of support for the conclusion reached, which we will now set forth.

The portion of the Conservancy Act relied upon by appellant, Chap. 45, Laws 1927, Sec. 515(1) (c), is as follows: (The assessments) "constitute a perpetual lien in amount not in excess of the benefits several-ly appraised, upon all the lands and other property against which such assessments shall be levied, as provided in this Act, to which only the lien for general or special State, County, City, Town, Village or school taxes shall be paramount, and no sale of such property to enforce any general or special State, County, City, Town, Village, School tax or other lien shall extinguish the perpetual lien of such assessments; Provided, however, that assessments levied under this Act shall not in any event be a personal liability against the owner, but shall constitute a lien upon the property only."

The portion of the paving assessment law, cited in the briefs of appellee, is found in Sec. 1, Chap. 133, Laws of N.M.1923, and is as follows: (The lien of paving assessments) "shall be superior to all other liens except the lien for general taxes, but the sale of any such lot or parcel of land for general taxes shall not relieve such lot or parcel of land from such assessment or the lien therefor."

Counsel for appellant contend first that the court erred in its conclusion that the lien prior in point of time should be given priority over the lien subsequent in time. They next argue that if they are wrong in that position, then the court erred in its holding that the two existing liens should not be treated equally and on a parity.

The cases passing on the question of priority as between liens for public improvements are collected in the annotations in 5 A.L.R. page 1301, and in a supplemental

annotation in 99 A.L.R. p. 1478, which discusses fully the three theories referred to in the opinion of the trial judge.

It would serve no good purpose to review here these various decisions. We agree with the Iowa Supreme Court in its opinion in Des Moines Brick Mfg. Co. v. Smith, 108 Iowa 307, 79 N.W. 77, 78, that: "After all, the question is one of statutory construction only. The lien of intervener [the holder of the earlier lien] is first and paramount, unless the statute otherwise provides; and this we think is not the case." We could readily agree that a portion of the language heretofore quoted from the two acts could logically bring us to a conclusion that the two acts construed together establish equality or parity between the paving lien and the conservancy assessment lien, and that both of these liens, while being of the same rank and dignity, are inferior to the liens of ad valorem taxes and that they are both superior to all other liens not of the same class. See Des Moines Brick Mfg. Co. v. Smith, supra, holding that the language, "shall have precedence over all other liens, excepting ordinary taxes" refers to liens of some other class or kind. We think that the language quoted from the statute, taken alone, did no more than classify and fix the rank and quality of the improvement liens. In the first and superior class are the liens of ad valorem taxes; in the second and middle class are the two special improvement liens authorized to be created by Chapters 133 and 140 of the Laws of 1923. In the third and lower class are all other liens. This process is not novel. For instance, in our Mechanics Lien Law we find that the legislature has fixed the priority of the classes of mechanics liens. See Sec. 82-212, N.M. S.A. 1929. As to priority between liens of the same class, other considerations may doubtless control. Apparently by Sec. 82-205 these liens, regardless of rank, have priority over "any lien, mortgage or other incumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance of which the lien holder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or the materials were commenced to be furnished." In Stearns-Roger Mfg. Co. v. Aztec, etc., Co., 14 N.M. 300, 93 P. 706, 712, the Territorial Supreme Court said: "The Legislature in thus securing to the bona fide mortgagee who had complied with the recording acts a preference over the person performing labor or furnishing material for improvements on the land, acted justly and in accordance with equity and common sense. The laborer or material man has notice of the prior lien, or may have by searching the records, before his labor is performed or his material furnished, and it is only just that he use the ordinary caution of ascertaining as to prior liens beforehand, while, on the other hand, if the mortgagee had filed his mortgage for record, and thus given notice of it to the world, it would be absurd to com-

pel him to watch his security lest some laborer or material man enter the premises and 'improve' him out of it."

A consideration of these same principles of equity and justice caused the Supreme Court of Kentucky, in Crumley, Jones & Crumley Co. v. Hermann, 1933, 249 Ky. 300, 60 S.W.2d 618, 619, in dealing with the priority of a street improvement lien and a water main lien levied against the same property under the same statute, after considering all three theories advanced in the case at bar, to hold that the first assessment levied is superior and to remark that if the general assembly had meant that the lien first imposed should be subject to future impairment, it would have said so and that: "The bidder on the first improvement would then be acting with his eyes open. In the absence of a specific provision to the contrary, he was entitled to believe that his claim would remain first. He contends that such construction of the statute works no injustice and is the only fair one, and that in the present case, before bidding on the street improvement, the contractor doubtless examined the town's records and found no prior improvement liens; that on the discovery of such condition he bid, and in so doing he relied on the security which a reasonable construction of the statute appeared to give him. On the other hand, he contends, when the appellant examined the record, he found the street improvement lien already in effect, and he was not then compelled to bid on the water main contract, but of his own volition did so.

Therefore he should be held to have done so in the belief that the property, by being so improved, was sufficient to pay for both improvements." The Kentucky court further says: "It is to be noted that the language of this quoted part of the statute is that 'the assessments * * * shall be a lien upon the property * * * from the date of the passage of the ordinance ordering the improvement made, and shall remain a lien until fully paid off, * * * having a precedence over all other liens.' Under ordinary principles of construction, this quoted language might well be interpreted by a prospective bidder on a street improvement as to preserve his lien therefor 'against encroachments by future improvement liens.' "

We think the provisions of Sec. 1 of Chap. 133 to the effect that the clerk of the city shall make out, sign and attest with the municipal seal and file for record in the office of the county clerk of the county in which said city is located, "a claim of lien for the amount due and assessed against each lot and parcel of land so assessed and all purchasers, mortgagees or incumbrancers of any such lot or parcel of land shall take the same subject to such lien," is an express declaration of an intent which the Kentucky court said would be a reasonable interpretation of their statute that a bidder on a street improvement would be protected "against encroachments by future improvement liens". To hold otherwise would require us to conclude that future improvement liens are not incumbrances and that the holders of such liens

are not "incumbrancers", and that when the legislature said, "all * * * incumbrancers", they meant all but future improvement liens. An examination of the definitions of "incumber; incumbrance", in Words & Phrases, Permanent Edition (1940), Vol. 20, page 614 et seq., discloses that many courts have rather uniformly held that special assessment liens are "incumbrances" and at page 619, "incumbrancer" is defined to be one who has an incumbrance or legal claim on an estate, and that "incumbrancer" is the holder of an incumbrance, and at page 620 it is said: "A lien or charge upon land, which binds it for the payment of a debt, is an 'incumbrance,' and the holder of the lien is an 'incumbrancer.' "

We have no doubt, therefore, that the portion of Sec. 1, Chap. 133, Laws 1923, last quoted, is sufficiently broad and explicit to require future bidders who contemplate deriving security for municipal local improvement assessments to take notice of prior existing assessment liens which have been duly filed or recorded, and, also, that such new improvement liens, if created, will be established "subject" to such recorded special assessment lien. The Supreme Court of Oregon, in Scott-McClure Land Co. v. City of Portland, 1912, 62 Or. 462, 125 P. 276, 277, held that the sale of property under junior assessment lien would not extinguish a prior lien of the same character. The court quoted an Oregon statute to the effect that when an assessment becomes delinquent, a person having a lien on the lot by judgment, decree, or mortgage, or having purchased the same for any delinquent tax or assessment, may, at any time before the sale of the lot or part thereof, pay the same, and such payment discharges the property from the effect of the assessment, and the amount and costs and charges shall thereafter become a part of the lien creditor's claim and shall bear interest, and may be enforced and collected as a part thereof. The court said that a construction contrary to the holding of the court would work great inconvenience in many instances "while a purchaser under a junior lien always has it in his power to pay off the prior lien, which presumptively has increased the value of his property to an extent at least equal to its amount." We think the same argument may be employed here, since we have a statute affording similar opportunity of protection to the junior incumbrancer. Sec. 90-1218, N.M.S.A.1929, enacted in 1903, and re-enacted with slight changes not material here in Chap. 88, Laws 1939, referring to street improvements, provides: "Such liens shall bear interest at the rate of eight per cent. per annum from the date of the filing thereof until paid, and after such recording may be sold and assigned to any person for its face value with interest, and may be foreclosed at any time after such recording in the same manner as provided for the foreclosing of mortgages on real estate." We have no doubt that this provision would enable the defendant or those for whom it is trustee to pay off the prior paving lien and take an assignment

thereof if their interest should impel them to do so.

■ Counsel for appellant and amici curiae urge that the employment of the phrase "perpetual lien" in Sec. 515(1) (c), Chap. 140, Laws 1923, in the clauses "and no sale of such property to enforce any general or special State, County, City, Town, Village, School Tax * * * shall extinguish the perpetual lien of such assessments", and in the earlier clause (The assessments) "constitute a perpetual lien in amount not in excess of the benefits severally appraised, upon all the lands and other property against which such assessments shall be levied," is sufficient to indicate a legislative intention that such assessments shall in fact be perpetual and can only be discharged by payment in full. This clause is troublesome, but we do not think so much reliance can be put on it.

It had been held in 1914 by the Minnesota Supreme Court in Midway Realty Co. v. St. Paul, 124 Minn. 300, 145 N.W. 21 (cited by us in Waltom v. City of Portales, 42 N. M. 433, 81 P.2d 58), construing a statute making general tax liens and city assessment liens of equal rank, that nevertheless this equality of rank only exists as to city assessments accruing in any year with the lien of taxes for that year. The court held that each lien is superior to all that precede it in time, and that a later tax lien or assessment lien will take priority over all earlier liens, whether taxes or assessments. It was probably the thought of our 1923 legislature, in expressing the idea

that no sale of property to enforce a lien for ad valorem taxes should extinguish the improvement lien, to make this so, regardless of whether such ad valorem tax lien attached in the same year that the assessment lien accrued or not, and thus sought to lend emphasis to this idea by stating that the assessments should be a perpetual lien, in the sense that they would not be displaced or extinguished, either by the lien of ad valorem taxes for the year current with the establishment of the lien of the improvement assessment, or by ad valorem tax liens created in future years, even though the conservancy assessment liens may possibly exist, as in the case at bar, for forty years. In other words, it is reasonable to conclude that all the legislature intended by employing the phrase "perpetual lien", in view of the context, was that the assessment lien shall be perpetual as against current and future recurring ad valorem tax liens. We do not find many definitions of the phrase "perpetual lien". The permanent edition of Words & Phrases just published only gives one, which is as follows: " 'Perpetual lien,' as used in a statute declaring taxes to be a perpetual lien is to be taken as meaning a primary lien, overriding all others, and not as continuing delinquent taxes in force against real estate after the statute has barred a right of action thereon. D'Gette v. Sheldon, 44 N.W. 30, 32, 27 Neb. 829." 32 Words & Phrases, Permanent Edition, p. 172.

If this is the correct view, then all that was intended by the legislature was to em-

phasize the assertion in the same sentence that no other lien shall be paramount to the conservancy assessment lien except ad valorem tax liens. A similar assertion is in the paving statute.

Another thing requires attention. Amici curiae, in their brief, say: "In our opinion the lower Court was right in giving priority to the paving lien over the conservancy lien, but for a wrong reason. The paving lien is first in right, not because it is first in time but because the Conservancy Act gives it priority." This statement is based upon the assumption that the lien for paving assessments is comprehended by the words "special * * * taxes" as employed in Sec. 515(1) (c), Chapter 140, Laws 1923. We are not unmindful that the term "special taxes" has frequently been used to include an assessment for street improvements. The term "special taxes" has also been used as including income tax and inheritance tax. Cooley on Taxation, 4th Ed., Sec. 51, says: "It is not unusual, however, for a different meaning to be given to the term 'special taxes.' Taxes are often spoken of as special if levied for a special purpose, and general if levied for some of the ordinary purposes of municipal government. A 'special' tax, as the term is used in the statutes, is sometimes held to mean an additional tax over and above the general tax." For instance, Sec. 90-1401, N. M.S.A.1929, provides that when in the opinion of a governing body of a municipality it shall be advisable to construct or repair paving or other improvements in any street abutting on land owned by such municipalities, the United States of America, the State of New Mexico, or any county thereof, the governing body may provide for the whole or part of the cost of the improvements chargeable against the front footage of such public property under existing laws to be raised "by causing to be levied upon the taxable property within such municipalities a special tax which shall not exceed one mill on the dollar for any one year, the proceeds of such tax to go into a special fund to be applicable only to the payment of the cost of such repairs or construction." Section 90-1402 provides: "The special tax levy herein provided for shall not be subject to any limitations of chapter 17 of the laws of 1919, or of chapter 74 of the laws of 1915, or any other tax limitations except constitutional limitations." The reason for this statute is apparent because manifestly a lien could not be imposed upon the public property as foreclosure of such a lien would be against public policy. Other illustrations might be mentioned but this is sufficient. When we contemplate that the assessments authorized to be imposed by the Conservancy Act could, with equal propriety, be considered special taxes as easily as the special assessments authorized to be imposed by the street improvement law, it seems unlikely that the legislature in using the phrase "special * * * taxes" was alluding to street improvement assessments and conservancy assessments, because that would be as much as to say that "to which special taxes only the lien for special taxes shall be paramount." So viewing the matter

and for the foregoing reasons, we have in this opinion employed the expression "ad valorem taxes" as equivalent in meaning to the long phrase "general or special State, County, City, Town, Village or School Taxes".

As we have heretofore said, we are not disposed to attempt a review of the many cases cited or to show where the weight of authority lies. After a careful consideration we are impressed with the reasoning of those cases which hold against the inverse order rule. Common law principles make "first in time, first in right". Like our Territorial Supreme Court in Stearns-Roger Mfg. Co. v. Aztec, etc., Co., supra, we are not disposed favorably to the view that the last can "improve" the first out of his position of vantage unless the statutes clearly so provide, and this we think is not the case.

■ We are unprepared to accept the equality or parity rule, and from all of the foregoing we think the trial court reached the correct conclusion, and that the judgment must be affirmed insofar as it establishes the liens of the plaintiff as prior to the liens claimed by the defendant.

We have, in the foregoing discussion, assumed, as have counsel, that the portion of the conservancy act relied upon by appellant and the portion of the paving statute cited in the briefs of appellee, each of which we have heretofore quoted, have the effect to give equal rank to paving liens and conservancy liens as a class, and that they both are subordinate to the liens of ad valorem taxes, and that each is superior to all other liens, except the liens of ad valorem taxes. We think, however, it is proper to call attention to the difference in the language of these two statutes. The paving statute says distinctly that the lien of paving assessments "shall be superior to all other liens except the lien for general taxes." Whereas, the conservancy act says of the conservancy liens that, only the lien for general or special state, county, city, town, village or school taxes shall be paramount to the conservancy liens. This may mean that the conservancy lien is not inferior to other liens. We have thus the apparent inconsistency that the paving liens are superior to conservancy liens, and that the conservancy liens are not inferior to paving liens, and not, as counsel have argued, that each of these liens is superior to all other liens except the liens of ad valorem taxes. As to whether the language of the conservancy act properly construed gives superiority as does the paving statute to all other liens except the lien for ad valorem taxes, we do not undertake to say. We have merely assumed that such is the case.

We call attention to the provisions of Chap. 118, Laws 1929, wherein the lien of paving assessments is placed on a parity with the lien of ad valorem taxes. Whether this is an expression of legislative understanding that paving liens are superior to conservancy liens, we do not decide.

■ Chap. 86, Laws 1939, has been referred to by counsel for appellant as sup-

porting its argument. We think the last cited enactment is a procedural statute, and creates no priority of liens. It seems to have reference to those municipal special assessments which are on a parity with ad valorem taxes. The legislature has, by Chap. 118, Laws 1929, expressly placed paving assessments on a parity with ad valorem taxes. The legislature has not done this expressly with respect to conservancy liens, and rather to the contrary, in a statute unchanged, expressly said that the lien of ad valorem taxes is paramount to the conservancy liens.

We think Chap. 86 of the Laws of 1939 is of little value in our considerations.

The cause will be remanded with the direction that the defendant, Middle Rio Grande Conservancy District, be given an opportunity to take such steps as it may be advised to protect its interests, if any, in the proceeds of the sale or otherwise, and

It is so ordered.

BRICE, C. J., and ZINN and MABRY, JJ., concur.

SADLER, Justice (dissenting).

The majority opinion gives priority to the paving lien over the conservancy lien, resting its conclusion both upon the pertinent paving statute, L.1923, c. 133, and upon an application of the common law principle that first in time is first in right. In so far as the priority accorded rests upon the statute, it involves an unwarranted definition of the word "incumbrancer". And a proper application of common law principles is denied by an obvious implication of equality arising from the controlling language of the two statutes involved—L.1923, c. 133, § 1 and L.1923, c. 140, § 515(1) (c).

The pertinent language of the paving statute reads: "And it shall be the duty of the clerk of said city, town or village within thirty days after the completion and acceptance of the work, or any portion thereof approved by the engineer of the municipality, to make out, sign and attest with the municipal seal and file for record in the office of the County Clerk of the county in which said city, town or village is located, a claim of lien for the amount due and assessed against each lot and parcel of land so assessed and all purchasers, mortgagees or incumbrancers of any such lot or parcel of land shall take the same subject to such lien, which shall be superior to all other liens except the lien for general taxes, but the sale of any such lot or parcel of land for general taxes shall not relieve such lot or parcel of land from such assessment or the lien therefor." L. 1923, c. 133, § 1, (1929 Comp., § 90-1701).

The language most to consider in the Conservancy Act reads:

"(1) All assessments provided for in this Act, together with all interest thereon and all penalties for default in payment of the same, and all costs in collecting the same, shall, from the date of filing:

* * *

"(c) The Maintenance Fund Assessment Record with the Assessor constitute a per-

petual lien in amount not in excess of the benefits severally appraised, upon all the lands and other property against which such assessments shall be levied, as provided in this Act, to which only the lien for general or special State, County, City, Town, Village or School taxes shall be paramount, and no sale of such property to enforce any general or special State, County, City, Town, Village, School tax or other lien shall extinguish the perpetual lien of such assessments; provided, however, that assessments levied under this Act shall not in any event be a personal liability against the owner, but shall constitute a lien upon the property only." L. 1923, c. 140, § 515(1) (c). Cf. 1929 Comp., § 30-515.

It is plain from a reading of these two statutes that each purports to give to the respective liens authorized a "superiority", "paramountcy" or "priority", whichever one may choose to call it, over every other kind of lien known to the law except the lien for general or ad valorem taxes. The paving statute declares the paving lien shall be superior to all other liens except the lien for general taxes. The Conservancy Act proclaims the conservancy lien shall be paramount to all other liens except the lien for general taxes. Both the opinion of the majority and of the trial judge seem to agree that on the face of the language employed this suggests equality. I feel that by strong implication, it compels equality.

The legislature in thus giving the same rank to each lien puts both on the same plane. If each is superior to every other kind of lien except the lien for general taxes and if the lien of each will survive a foreclosure of the general tax lien (and each statute so declares), then how can it be denied that by plain mandate of the two statutes they are given equal rank? Things that are equal to the same thing are equal to each other. Having equal rank, with neither made superior to the other, they should share ratably in the proceeds of any sale of the property for the foreclosure of both liens.

The plaintiff is in a court of equity seeking foreclosure of its lien on property seemingly insufficient to pay the same in full and, at the same time, satisfy another lien of equal dignity and rank whose owner it has brought before the court compulsorily in an effort to cut off and extinguish the latter's lien as subordinate and inferior to its own. Under such circumstances, both liens being on an equal footing, the court will or should apply the ancient equitable maxim that equality is equity, or as it is sometimes expressed, that equity delights in equality, and decree a proportionate distribution of the funds arising from a sale under foreclosure of both liens. 21 C.J. 206; 19 Am.Jur. 315.

I entertained the same view about the claimed priority between bondholders in a matter before us in State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865, as that which I here advance. As pointed out in my specially concurring opinion in that case, there being no express

statutory authorization to municipalities to award priority as between bonds but rather a strong implication that equality should prevail and in further view of the equitable maxim mentioned, the court should have declared proper a proportionate distribution of the fund arising from the foreclosures. Such should be the holding here.

The majority, if left to the conclusion to arise from the mere legislative declaration that each of these liens should be superior to all others except that for general taxes, and the omission expressly to declare any priority between the two improvement liens themselves, would seemingly be content, as the trial judge indicated he would be, to deduce a legislative intent that equality was contemplated. But they are able to satisfy themselves that in the use of the word "incumbrancer" in the paving act, the legislature expressly made that lien, when recorded, prior and superior to a subsequently attaching conservancy lien. In my opinion, nothing could be farther from the fact.

The language relied on is that which follows the direction to the city clerk to make and file with the County Clerk of the county in which the city is located a claim of lien for the amount due and assessed against each lot and further providing; "* * * and all purchasers, mortgagees or *incumbrancers* of any such lot or parcel of land shall take the same subject to such lien, which shall be superior to all other liens except the lien for general taxes, but the sale of any such lot or parcel of land for general taxes shall not relieve such lot or parcel of land from such assessment or the lien therefor." (Italics mine.)

Citing 20 Words & Phrases, Perm.Ed., 614, to the proposition that special assessment liens are "incumbrances" and the same authority at page 619 to the point that one who holds an incumbrance. is an "incumbrancer", the majority hold that the word "incumbrancer" italicized in the statute quoted above embraces the holder of a subsequently attaching lien of the same kind and rank imposed by public authority for a public purpose. Thus is read from the statute an expressly declared priority of the paving lien over the particular conservancy lien here involved as one attaching subsequent to the recording of the paving lien.

It seems to me the majority are clearly wrong in extending the meaning of "incumbrancer" as here employed to embrace other liens of like kind imposed by governmental authority. The maxim noscitur a sociis applies and confines the word to a meaning kindred to that of the words with which it is associated. See 46 C.J. 496 where many cases applying the maxim are cited. Arroyo Ditch & Water Co. v. Superior Court of Los Angeles County, 92 Cal. 47, 28 P. 54, 55, 27 Am.St.Rep. 91, will illustrate my point even if it does so somewhat conversely. The California Constitution, art. 6, § 5, declares that the superior court shall have original jurisdiction "in all cases at law which involve the * * * legality of any tax, impost, assessment, toll,

or municipal fine". It was held that the term "assessment" does not include installments of "calls" made by a private corporation on its stockholders under Code Civil Proc.Cal., § 838. The Court said: "The term 'assessment' used in this provision does not include the installments or 'calls' which are sometimes termed 'assessments,' made under the provisions of section 315 of the Civil Code, by a private corporation upon its stockholders, in accordance with an agreement on their part, express or implied, to pay into its treasury the amount subscribed by them to its capital stock. It has reference to such assessments as are authorized by those provisions of the constitution which relate to revenue and taxation, and to such as may be made under the authority of a municipal or other public corporation for the purpose of meeting the cost or expense of some public improvement. Taylor v. Palmer, 31 Cal. [240] 241. The other words in the clause, in connection with which the term is associated, serve to illustrate its meaning, and resolve any doubt that might otherwise be raised respecting the sense in which it is to be interpreted. Each of these subjects, viz., tax, impost, toll, municipal fine, of which jurisdiction is thus conferred upon the superior court, implies a charge imposed by public authority for some public purpose, and, under the rules by which the maxim noscitur a sociis is applied, it is clear that the 'assessment' referred to is of a kindred nature."

Just as in the California case the word "assessment", from the associated words, was confined in meaning to "a charge imposed by public authority for some public purpose", so here and by like reasoning and by an application of the same maxim, the word "incumbrancer" must be held to exclude from its meaning liens "imposed by public authority for some public purpose."

That this is the correct view may be easily demonstrated. If the word "incumbrancer" as employed has the meaning claimed for it by the majority, then the state as the holder of a lien for general taxes is an incumbrancer. It is well established that the lien held by the state for general taxes is an "incumbrance", 20 Words & Phrases, Perm.Ed. 617, and that a covenant against incumbrances is breached by the existence of a lien for such taxes. Patterson v. Cappon, 125 Wis. 198, 102 N.W. 1083; Maddocks v. Stevens, 89 Me. 336, 36 A. 398. Therefore, under the definition adopted by the majority, but for the express declaration of priority contained in the exception following the use of the word "incumbrancer", the paving lien would have priority over general tax liens attaching subsequent to the recording of the paving lien. Now, I do not think the majority would contend for a moment that the excepted priority in favor of general taxes was at all necessary to give them priority over the paving lien. Certainly, it could not be successfully so contended.

But assuming for the moment that the exception in favor of priority for general taxes is necessary in order to preserve same against priority for the paving lien, then

what will the majority say when there shall come before this court for decision a question of priority as between a mechanic's lien and the lien for general taxes where the statute contains no such exception? 1929 Comp., § 82-205, relating to mechanic's liens, provides: "The liens provided for in this article are preferred to any lien, mortgage or other incumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished."

Here the word "incumbrance" obviously cannot be held to accord priority to the mechanic's lien over the lien for general taxes or, as for that matter, over the lien of a public improvement assessment. Yet, is there any more reason for holding the word as employed in the paving statute includes public improvement assessment liens than to accord it the same meaning here? I think not. It should not be given that meaning in either statute. In both, it should be so confined as to exclude the lien of "a charge imposed by public authority for some public purpose". The meaning of the word must be determined from its context. In Crabb v. Young, 92 N.Y. 56, 69, it was held that to call a tax an "incumbrance" within a provision in a will requiring investments to be made in mortgages on unincumbered real estate, "would give it an unreasonable and impracticable construction". So, it seems, does the broad definition given the word "incumbrancer" by the majority in the case at bar. But without that definition, the majority have indeed a slender reed to support their conclusion of priority for the paving lien over the conservancy lien.

The view I advance on the meaning of "incumbrancer" as employed in the paving statute is sustained by the construction given the word "lien" by the Supreme Court of California in Thompson v. Clark, 6 Cal. 2d 285, 57 P.2d 490, 493. The court said: "Not only did section 66 fail to expressly regulate the ranking of conflicting liens arising under the same statute, that is, the act of 1911; but it did not determine the ranking of assessment liens arising under said statute with general tax liens and assessment liens arising under other statutes. The declaration in the section, that the lien therein referred to shall be a first lien, cannot be construed as giving said lien priority over all general tax liens and other assessment liens whether imposed previously or subsequently. *The provision should be construed as referring to private liens, rather than to those existing in favor of a public agency or created for a public purpose.*" (Citations omitted—italics mine.)

Three different rules are employed where this same question of priority between public improvement liens of the same rank has arisen. As noted by the prevailing opinion, some courts give priority to the first attaching lien in an application of the common law principle that first in time is first in right. Others, through analogy to the rule employed to determine priority between general tax liens for successive years, give priority to the latest attaching

lien in an application of the familiar doctrine that last in time is first in right. And as to each of these, the courts adopting the one or the other, advance reasons peculiar to public improvement assessment liens which seem quite apart from any consideration which must have prompted adoption of the rule applied, to support the justness and fairness of the rule being favored.

Then, there is the third rule which claims support in the maxim that equality is equity. Citizens' Trust & Savings Bank v. Fletcher American Company, 207 Ind. 328, 190 N.E. 868, 192 N.E. 451, 99 A.L.R. 1474; Hollenbeck v. Seattle, 136 Wash. 508, 240 P. 916; Central Savings Bank & Trust Co. v. Tucker, 182 La. 289, 161 So. 759; Stiers v. Vrooman, 234 Mo.App. 161, 115 S.W.2d 84; City of St. Louis v. Wall, Mo.App., 124 S.W.2d 616; Powell v. City of Amarillo, 127 Tex. 294, 93 S.W.2d 144, and Willard v. Morton, 50 Wyo. 72, 59 P.2d 338, where an extensive review of the authorities is to be found. See, also, annotations in 5 A.L.R. 1301, supplemented in 99 A.L.R. 1478. The conclusion of the Supreme Court of Texas in Powell v. City of Amarillo, supra, is peculiarly applicable to our own statutes. It said [127 Tex. 294, 93 S.W.2d 146]: "The language of both the statute and charter authorizing the levy of the special assessment liens indicate[s] they are dealt with as a class, and that this class of liens is given priority as such over all other liens except general tax liens referred to as 'lawful ad valorem taxes.' The language according priority in each instance to the special assessments authorized being the same, is fairly susceptible of the construction that it is the class of assessments rather than any particular assessment that is given priority. In our opinion it was the legislative intent to place the successive liens to be fixed against the property improved by special assessment, upon a parity. This construction obviates holding that the city council by using in its assessing ordinances substantially the language of the statute fixed a first lien (except for general taxes) against the lot to secure the cost of paving one of the two streets upon which it abuts, and twenty-eight days later fixed against it a lien of a different status as to priority to secure the cost of paving the other. Such intention should not be imputed unless it clearly appears from the language used, especially in view of the fact that each certificate recites that the cost of each paving improvement thus secured is not in excess of 'the special benefit * * * such property received in enhanced value by reason of such improvements.' Brownell Improvement Co. v. Nixon, 48 Ind.App. 195, 92 N.E. 693, 95 N.E. 585."

In Central Savings Bank & Trust Co. v. Tucker, supra, the supreme court of Louisiana, after reviewing the authorities on all sides of the proposition, said [182 La. 289, 161 So. 761]: "The best reasoning on this subject is in the decisions maintaining that liens arising from assessments for street improvement, in a case like this, are of equal rank, regardless of the relative dates of assessment or of registry of the liens. Mortgages, either conventional or judicial

mortgages, take rank in the order in which they are recorded; but liens, unlike mortgages, are ranked in the order fixed by the statutes creating them. It is declared in article 3273 of the Civil Code that privileges (meaning liens) are valid against third persons from the date of the recording of the act, or evidence of indebtedness, as provided by law. That means merely that a lien shall not affect the rights of third persons unless it is recorded in the method provided by law. It does not mean that when two or more liens have been recorded as provided by law they shall take rank in the order of date or time in which they were recorded."

As already stated, it is to this rule that I subscribe. Certainly neither of the other rules can lay as much claim to the quality of justness and fairness. And, in my opinion, it more nearly reflects the true intention of the legislature than either of the other rules. Because in many instances the legislative theory that the benefits equal the cost of the improvement proves false, the majority feel warranted in ignoring such theory on the question of priority, to test the rights of the parties by the realities. This, I challenge the right to do.

The legislature, on the assumption that the benefits would equal the cost, authorized the improvement and the issuance of paving certificates and bonds to anticipate payment of the assessments. There would be no constitutional warrant for imposition of the assessments but for this assumption. It would be to convict the legislature of a fraud to say payment in full of the certificates or bonds was not within legislative contemplation. State v. Little River Drainage District, 334 Mo. 753, 68 S.W.2d 671; State v. Duncan, 334 Mo. 733, 68 S.W.2d 679; and specially concurring opinion of Mr. Justice Hudspeth in State ex rel. Ackerman v. City of Carlsbad, supra. If, in enacting the law, the legislature thought the benefits would equal the cost; if, in authorizing bonds not exceeding benefits appraised, it believed assessments sufficient in amount would be realized to retire the bonds; then, clearly the legislature outlined a plan necessarily bottomed on equality since everybody was to be paid in full. Later, when it develops that the legislative theory of equality, which assumes success for the plan, is to abort and fail, are we justified in casting aside the theory as fictional and determining priorities in utter disregard of same? I do not think so. On the contrary, I believe that when the legislature assures equality in the successful working out of the plan authorized, by necessary implication, it compels it in its partial failure, where there is no express declaration to the contrary, and there is none.

In practical effect, although in each instance declaring a priority for general taxes, the two statutes place the public improvement liens on a virtual parity with the lien of general taxes where upon a joint foreclosure of the two liens, there is not enough money realized to pay both. That this is true is abundantly reflected by L.1939, c. 86, where procedure is set up for enforcing the parity upon a sale of the

property discharged of both liens and a division of the proceeds pro rata. It is to be noted that the 1939 act does not confine its operation to assessment liens which previously have been declared expressly to be on a parity with general taxes. This legislation merely recognizes a parity virtually already existing as between the general tax and these special assessment liens, resulting from the fact that each survives a foreclosure of the other.

I do not think the trial court had power to order the property sold freed of the conservancy lien. The statute expressly declares that any sale of the property for general taxes shall not extinguish the perpetual lien of the conservancy assessments. It seems somewhat illogical to hold, as the statute requires, that both the paving and conservancy liens shall survive a sale for general taxes (the lien of which ordinarily has the highest rank and dignity known to the law and even with parity is not inferior to assessment liens); and at the same time to hold that foreclosure of a special assessment lien (normally inferior in rank and with parity not superior), shall extinguish the lien of another special assessment of equal rank with it. It just doesn't sound logical to me.

It is to be remembered that the city came in asking the foreclosure of its paving lien, making the Conservancy District a defendant. The latter without asking foreclosure of the conservancy lien, as I understand its answer, asserted priority for its lien over the paving lien and prayed that the proceeds of the sale under plaintiff's foreclosure be first applied to the conservancy lien to the extent of any existing delinquencies. It expressly prayed that any sale of the property in foreclosure of the paving lien be made subject to the conservancy lien. There also was a prayer for general relief. The trial court having denied priority to the conservancy lien and having given priority instead to the paving lien, the defendant still contending here for priority of the conservancy lien, argues that if it be wrong in this contention, parity with the paving lien is the lowest rank that should have been accorded it by the trial court.

Within the defendant's prayer for general relief, and particularly in view of its specific prayer for priority and for application of the proceeds of any sale under the paving lien to the payment or satisfaction, as the case might be, of existing delinquencies under the conservancy lien, the trial court may have been authorized to order sequestered in the hands of the special master any proceeds of the sale under the paving lien in excess of the amount required to satisfy it, for application toward the satisfaction of delinquencies existing on the conservancy lien. Such an order would seem proper and just since, if defendant's answer is to be correctly understood as not asking for foreclosure of its lien, the purchaser at the sale would properly take subject to it. Such excess thus would be used to discharge delinquencies constituting a charge against the land purchased.

It is to be emphasized again that the conservancy district did not ask foreclosure of its lien and that the city as holder of the paving lien did ask such foreclosure. This circumstance, in my opinion, is significant. All that I have said about equality in the distribution of funds upon a sale of the property and the denial of priority to either lien holder as against the other presupposes a case where both the paving and conservancy liens are being foreclosed in the same proceeding on property of insufficient value to pay both liens in full. If the property is of sufficient value to pay both liens no question of priority arises. If only one of the liens is being foreclosed, as in the case at bar, no question of priority is presented if the court properly orders the sale made subject to the other lien. And upon a single foreclosure the plaintiff in foreclosure should receive the entire proceeds of sale up to the amount of its lien plus costs.

The majority opinion winds up its discussion of the legislative intent in the use of the word "perpetual" found in the conservancy act (and by intendment in the paving act) with this language: "In other words, it is reasonable to conclude that all the legislature intended by employing the phrase 'perpetual lien', in view of the context, was that the assessment lien shall be perpetual as against current and future recurring ad valorem tax liens."

I am able to accept this conclusion with additions. Of course, the meaning of the word "perpetual" cannot be accepted with all its implications. If so, it would endure throughout eternity, regardless of payment, voluntary relinquishment or waiver by the holder. We know the word cannot have this meaning. I agree with the prevailing opinion that it means "that the assessment lien shall be perpetual as against current and future recurring ad valorem tax liens"; but to this I would add "and also as against other liens 'existing in favor of a public agency or created for a public purpose', and as against existing statutory restrictions as to time, if any, upon the right to enforce the same".

Payment, all agree, will discharge these so called "perpetual" liens. Unquestionably, the holder of such a lien could voluntarily relinquish it. And, as I view the matter, whenever the owner of either a paving or a conservancy lien comes into court and voluntarily asks the foreclosure of his lien, he thereby consents that the property may be sold discharged of such lien. But he cannot consent that the property also shall be sold discharged of another public improvement lien of equal rank whose owner, although compulsorily before the court at the instance of the other lien holder, not only has failed to ask for foreclosure thereof but on the contrary specifically has prayed that it be preserved against the foreclosure of the other lien.

It may be said that so to hold will present insurmountable difficulties; that, where the property is of doubtful value, the holder of one lien would only move to foreclose when confronted by some con-

trolling statute of limitations, if there be one in New Mexico, and so forth. Arguments of greater convenience under a different holding also may be advanced. But, if there be difficulties attending a declaration of the law as the legislature has left it, they are not of our making. I feel it is the sensing of these difficulties that has driven the majority to the conclusion they reach. The solution of such difficulties, however, should rest with the legislature where they originated. The problem of clearing the tangled situation is legislative, not judicial. Such was the view of the supreme court of Indiana in Citizens' Trust & Savings Bank v. Fletcher American Company, supra, where, on rehearing, it said: "But, since the liens are of equal right, the land may not be sold for the sole benefit of appellees, nor can there be judgment that appellees' liens are superior to appellant's. The foreclosure procedure is statutory, and if it presents difficulties or is inadequate, the remedy must come through legislation."

Our legislature already has taken note of these difficulties in so far as they relate to the parity existing between the lien of general taxes and the two public improvement liens here involved. See L. 1939, c. 86, to which reference heretofore has been made. Perhaps the next or a succeeding session of the legislature, particularly in view of the public notice thereof likely to result from this proceeding, will take up the solution of the difficulties attendant on the parity existing between public improvement liens. This court should not anticipate such legislative action.

The slight difference in the language of the paving and conservancy acts in ranking the two liens is mentioned in the closing lines of the prevailing opinion. This difference deserves notice but, of course, cannot alter the obvious fact that the legislature in the language employed, in each instance, sought to give each lien an expressed superiority over every other lien known to the law, except the lien for general taxes. And, then, in the same legislative breath, by declaring that each should survive a foreclosure of the general tax lien, reduced them to a virtual parity with that lien. The fact that the learned trial judge in his written opinion filed below and that able and interested counsel, neither in their written briefs filed here nor in oral argument, have seen fit even so much as to mention this slightly different language of the two acts, is rather convincing that the assumption of the majority is true to legislative intent.

As already indicated, I think the trial court was in error in failing to order foreclosure of the paving lien subject to the conservancy lien. This view rests on the assumption that the defendant's answer, properly understood, does not seek foreclosure of the conservancy lien. The assumption is supported by the fact that the trial court interpreted defendant's answer as not seeking foreclosure of its lien, since none was ordered. But if this assumption be unwarranted and defendant's answer is

to be correctly understood as praying for foreclosure of its own lien; then each party, by seeking foreclosure of its lien, has waived any right under the statute to have the same survive a foreclosure of the other. The proper order, in that event, would be to direct a sale in forclosure of both liens, the proceeds to be distributed pro rata between the respective lien holders. In order to accomplish this result, the judgment of the trial court should be reversed. Because of a contrary conclusion by the majority, and for the reasons given, I dissent.